SANFORD CREAMER *vs.* INHABITANTS OF BREMEN.

Lincoln.    Opinion May 4, 1898.

*Tax. Personal Property—in transit. Action. Involuntary Payments. R. S.,*
*c. 6, §§ 13, 14, cl. 1. Stat. 1883, c. 126.*

The plaintiff, an inhabitant of another town, was the owner, on the first day of April, 1893, of a quantity of fire-wood piled upon a wharf and upon the adjacent shore in the defendant town, for which he was taxed in that year by the assessors of that town. Having paid the tax under protest he sought in this action to recover it.

During the preceding winter the plaintiff had cut and hauled this wood from a lot owned by him in the same town to a wharf and the adjacent shore in the defendant town belonging to another person, for the purpose of shipping it during the spring and summer to Thomaston. Before he commenced hauling he made an arrangement with the wharf owner whereby he obtained the right to pile his wood upon the wharf and the landing by paying an agreed wharfage. The plaintiff was the only one whose wood was piled on the wharf during that season, but there were others who, with the permission of

the owner and upon agreeing to pay the same price as wharfage, had hauled and deposited wood upon the same landing. The wood on the wharf was so arranged that a chance was left to drive a team across the wharf and turn around. A jury would have been authorized in finding, from the reported testimony, that the plaintiff had made no arrangement for any specific part of the wharf and had no further or greater right thereon than others who obtained a like permission from the owner, except as he first got possession of the wharf by piling his wood thereon.

*Held;* that under these circumstances this personal property was not taxable to the plaintiff in the defendant town by virtue of the provisions of R. S., c. 6, § 14, clause 1.

This wood, under the above circumstances, can not be said to have been " employed in trade" in the defendant town. It was not hauled to the wharf to be there sold, nor even to be shipped to the place or different places where the owner might subsequently sell it. It was hauled there for the definite purpose of being shipped from there to a particular place when the river opened for navigation in the spring. It was merely in transit.

To render a non-resident liable to be taxed for merchandise in a store, shop, mill or upon a wharf, landing place or ship yard, his occupancy must be of such a character and under such circumstances as would constitute him the owner of the premises for the time being. In this case, *held;* that the plaintiff was not such an occupant of the wharf or landing place, and that for this further reason the personal property was not taxable in the defendant town.

When money, claimed to be rightfully due, is paid voluntarily and with a full knowledge of the facts, it can not be recovered back, if the party to whom it has been paid may conscientiously retain it; and even taxes illegally assessed, if paid voluntarily, can not be recovered. But when a non-resident pays a tax for which he is not liable, under protest and for the purpose of avoiding a threatened arrest or seizure of his property, he may recover it of the town into whose treasury the money has been paid.

In an action for the recovery of money paid for taxes illegally assessed, the law is more liberal, as to what constitutes duress, than in other cases. The collector holds a warrant by which he is authorized to take the body or seize the property of the person against whom a tax has been assessed,—such person has had no opportunity to test the validity of the assessment against him; he has not had his day in court. In such a case he need not wait until his goods have been actually seized or his person arrested; but, for the purpose of preventing either, he may pay the amount demanded in such a way as to recover it, if, after judicial investigation, it should be decided that the tax was illegally assessed.

In this case, *held;* that the jury might have properly come to the conclusion, from the evidence reported, that the plaintiff paid this tax to avoid a threatened arrest or seizure of his property, which he had reasonable cause to apprehend; that he paid it under protest making the specific objection at the time that the wood was not liable for taxation in that town; and that the action is maintainable.

ON EXCEPTIONS BY PLAINTIFF.

This was an action to recover back money paid for a tax claimed to have been illegally assessed and claimed to have been paid under protest.

The facts appear in the opinion.

*O. D. Castner*, for plaintiff.

*Wm. H. Hilton and Weston M. Hilton*, for defendant.

On April 1, 1893, when the tax was assessed, the plaintiff occupied Storer's wharf in Bremen in the manner and for the purposes contemplated by the statute under which we justify, and no action to recover it back can be maintained. The plaintiff was for the time being, the owner of the wharf for the purpose of piling his wood upon it. There was no distinct part of the wharf assigned to him, but the whole wharf.

No action can be maintained for that part of the tax assessed on the plaintiff's wood piled upon the landing, as his remedy was by application for abatement. *Waite* v. *Princeton*, 66 Maine, 225; *Gilpatrick* v. *Saco*, 57 Maine, 277; *Stickney* v. *Bangor*, 30 Maine, 404; *Hemingway* v. *Machias*, 33 Maine, 445; *Howe* v. *Boston*, 7 Cush. 273; *Salmond* v. *Hanover*, 13 Allen, 119.

It seems to be the commonly accepted doctrine that payment of taxes where there is no legal duress will be deemed to have been voluntary, and the money cannot be recovered back. 6 Am. & Eng. Ency. of law, p. 86; *Hayford* v. *Belfast*, 69 Maine, 63; *Preston* v. *Boston*, 12 Pick. 14; *Smith* v. *Readfield*, 27 Maine, 145; *Hilborn* v. *Bucknam*, 78 Maine, 482.

Money voluntarily paid cannot be recovered back. *Parker* v. *Lancaster*, 84 Maine, 512.

As a general rule a protest is not effectual unless the payment or other act takes place under compulsion. Rapalje & Lawrence Law Dict., title, Protest.

Protest alone will not make a payment involuntary unless the payment is made by reason of some coercion, or by reason of duress of person or seizure of goods. *Smith* v. *Readfield*, 27 Maine, 145.

A person who, without compulsion of legal process or duress of

the goods or of the person, yields to the assertion of an invalid or unjust claim by paying it, cannot by a mere protest whether in writing or by parol, change its character from a voluntary to an involuntary payment. *Cook* v. *Boston*, 9 Allen, 393; *Emmons* v. *Scudder*, 115 Mass. 367.

SITTING: FOSTER, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

WISWELL, J. The plaintiff, an inhabitant of the town of Waldoboro, was the owner, on the first day of April, 1893, of a quantity of fire-wood piled upon a wharf and upon the adjacent shore, in the defendant town, for which he was taxed in that year by the assessors of that town. Having paid the tax under protest he seeks in this action to recover it. At the trial, after the plaintiff's testimony was closed, the presiding justice, for the purpose of giving progress to the case and in order to have certain questions determined by the law court, deemed it expedient to order a nonsuit, which was accordingly done. The two questions presented are, whether the tax was properly assessed against him; and, if not, whether he can recover back the money in this action.

The plaintiff being an inhabitant of Waldoboro, by R. S., c. 6, § 13, this, as well as all other personal property of which he was the owner, wherever situated, was taxable to him in that town and not elsewhere, unless it comes within the exceptions referred to in sec. 14 clause I of the same chapter, which is as follows: "All personal property employed in trade, in the erection of buildings or vessels, or in the mechanic arts, shall be taxed in the town where so employed on the first day of each April; provided, that the owner, his servant, sub-contractor or agent, so employing it, occupies any store, shop, mill, wharf, landing place or ship yard therein for the purpose of such employment."

From the report of the testimony accompanying and made a part of the exceptions, these facts appear: The plaintiff was the owner of a wood lot in the defendant town; during the preceding winter he had cut and hauled a quantity of wood to the wharf and the adjacent shore in the same town, belonging to one Storer, for the purpose of shipping it during the spring and summer to Thomaston.

Before he commenced hauling, he made an arrangement with the wharf owner whereby he obtained the right to pile his wood upon the wharf and the landing by paying an agreed wharfage of ten cents per cord for so much of the wood as was placed upon the wharf and eight cents per cord for that on the shore. The plaintiff was the only one whose wood was piled on the wharf during that season, but there were others who, with the permission of the owner and upon agreeing to pay the same price per cord, had hauled and deposited wood on the same landing. The wood on the wharf was so arranged that a chance was left to drive a team across the wharf and turn around. A jury would have been authorized in finding, from the reported testimony, that the plaintiff had made no arrangement for any specific part of the wharf and had no further or greater rights thereon than others who obtained a like permission from the owner, except as he first got possession of the wharf by piling his wood thereon.

Under these circumstances, was this personal property taxable to the plaintiff in the defendant town by virtue of the provisions of R. S., c. 6, § 14, clause 1, above quoted? We think not. Prior to 1883 the exception provided by the clause of the statute above quoted was much broader than it is now. Then the language of the first part of the clause was: "All goods, wares and merchandise, all logs, timber, boards and other lumber, and all stock in trade, including stock employed in the business of any of the mechanic arts, etc." But by chap. 126 of the Public Laws of 1883, the statute was so amended that the following language was used in the place of that just quoted: "All personal property employed in trade, in the erection of buildings or vessels, or in the mechanic arts, etc."

This wood can not be said to have been employed in trade in the town of Bremen. It was not hauled to the wharf to be there sold, nor even to be shipped to the place or different places where the owner might subsequently make sales of it. It was hauled there for the definite purpose of being shipped from there to a particular place when the river opened for navigation in the spring. It was merely in transit. The wood was not in the town of

Bremen for the purpose of trade, it was simply there because it had been cut from a wood lot in that town and the owner had not had an opportunity to remove it from the town prior to the day fixed by law for the assessment of taxes. The facts are entirely different from those in the case of *Gower* v. *Jonesboro*, 83 Maine, 142.

Nor do we think that the plaintiff occupied the wharf within the meaning of the statute. It has been frequently decided in this state that the statute meant an occupancy of such a character as to make the occupier the owner for the time being. In *Campbell* v. *Machias*, 33 Maine, 419, Chief Justice SHEPLEY said: "The design of the statute was to render liable to taxation the property of individuals, who so occupied a mill or wharf, as that they should be entitled to receive and not liable to pay mill rent for the lumber from time to time sawed in the one, or wharfage for lumber deposited on the other."

In *Desmond* v. *Machias Port*, 48 Maine, 478, a portion of a wharf was assigned by the owner to a non-resident by metes and bounds, to which he brought lumber from his mills in another town, placed it thereon, where it remained for several months awaiting sale or shipment. His right to use the premises was by written lease, for a fixed, certain and long period of time; it was held that this was an occupancy contemplated by the statute, but the court affirmed the doctrine of the case of *Campbell* v. *Machias*, supra, and laid down the rule, that to render a non-resident liable to be taxed for merchandise in a store, shop or mill, or upon a wharf, his occupancy must be under such circumstances as would constitute him the owner of the premises for the time being. See also *Stockwell* v. *Brewer*, 59 Maine, 286; *Martin* v. *City of Portland*, 81 Maine, 293; *Lee* v. *Templeton*, 6 Gray, 579.

In this case the plaintiff was not entitled to receive wharfage, he was obliged to pay it. He was not such an occupant as to make him an owner for the time being. He did not have control of the wharf; other persons obtained permission from the owner to occupy it in the same way by paying the same wharfage. This personal property was therefore not taxable to him in the defendant town.

The case shows that the plaintiff had no other personal property for which he was taxed in Bremen; consequently an action at law, as has frequently been decided, and not an application for an abatement upon the ground of over-valuation, is his proper remedy.

But it is further claimed that this suit can not be maintained because the payment of the tax by the plaintiff was voluntary. It is undoubtedly true that when money claimed to be rightfully due is paid voluntarily and with a full knowledge of the facts, it can not be recovered back, if the party to whom it has been paid may conscientiously retain it; and even taxes illegally assessed, if paid voluntarily can not be recovered. But when a non-resident pays a tax for which he is not liable, under protest and for the purpose of avoiding a threatened arrest or seizure of his property, he may recover it of the town into whose treasury the money has been paid.

In an action for the recovery of money paid for taxes illegally assessed the law is more liberal, as to what constitutes duress, than in other cases. The collector holds a warrant by which he is authorized to take the body or seize the property of the person against whom a tax has been assessed; such person has had no opportunity to test the validity of the assessment against him; he has not had his day in court. In such a case he need not wait until his goods have been actually seized or his person arrested; but, for the purpose of preventing either, he may pay the amount demanded in such a way as to recover it, if, after judicial investigation, it should be decided that the tax was illegally assessed.

An early and leading case upon this subject, is *Preston* v. *Boston*, 12 Pick. 7, in which it was held, that if a person not liable to taxation is called on peremptorily to pay upon a warrant held by a collector and running against the person and property of the party, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by showing that he is not liable, recover it back as money had and received.

In *Joyner* v. *Third School District in Egremont*, 3 Cush. 567, it was decided, that a payment of taxes to a collector who held a

warrant authorizing the arrest of the plaintiff and the seizure of his property, and who has threatened to enforce the same, was not such a voluntary payment of a disputed demand as would preclude the person thus, paying from opening the question of the right to enforce such payment, in an action to recover the money back. Payment of taxes under these circumstances is a payment under a species of duress.    *Wright* v. *Boston*, 9 Cush. 233.

In *Smith* v. *Readfield*, 27 Maine, 145, which was an action of this nature, it is said in the opinion of the court: "He proved that the several sums assessed to be paid in money, had been paid to the persons acting as collectors of taxes. There is no proof, that he was compelled to pay any portion of them by duress of his person or property; or that any part was paid under protest and to avoid an arrest of his person or seizure of his property." This language was commented upon by the court in the case of *Hathaway* v. *Addison*, 48 Maine, 440, where it is said: "This language clearly implies that if the payment had been made under protest, and for the purpose of avoiding an arrest or seizure of his property it would not have been voluntary." To the same effect see *Abbott* v. *Bangor*, 56 Maine, 310; and *Howard* v. *Augusta*, 74 Maine, 84.

We think that in this case the jury might have properly come to the conclusion, from the evidence reported, that the plaintiff paid this tax to avoid a threatened arrest of his body or seizure of his property, which he had reasonable cause to apprehend; that he paid it under protest, making the specific objection at the time and in many previous conversations with the collector and the assessors, that he was not liable to be taxed for the wood in that town.

The case shows that the money so paid has been turned into the treasury of the defendant town. The action can, therefore, be maintained upon the plaintiff's evidence, and he was entitled to go to the jury upon any issues of fact that were raised.

*Exceptions sustained.*