Charles K. CHAPMAN and Margaret O. Chapman, Plaintiffs,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Counterclaimant,

v.

Charles K. CHAPMAN and Margaret O. Chapman, Plaintiffs.

Civ. A. No. 67–335–PH.

United States District Court, C. D. California.

Aug. 23, 1972.

See also, D.C., 314 F.Supp. 549.

Charles K. Chapman and Margaret O. Chapman, in pro. per.

William D. Keller, U. S. Atty., Charles Magnuson, Chief, Tax Div., Mason C. Lewis, Asst. U. S. Atty., Los Angeles, Cal., for the United States.

## MEMORANDUM and ORDER

PEIRSON M. HALL, District Judge.

More than 26 years ago the United States seized the Long Beach Federal Savings and Loan Association in Long

Beach, California. This precipitated a series of litigation which has continued ever since. The within case is the last case still pending growing out of that seizure. It was expected, and hoped I may add, that with the summary affirmance by the United States Court of Appeals for the Ninth Circuit of the July 10, 1970 Judgment as modified on October 12, 1971 would finally end this saga of litigation thus begun 26 years ago.

But the United States refuses to abide by the judgments of this Court as they were affirmed. This is consistent with the actions of the defendant in this case for failing to file an answer, refusing to respond to interrogatories, refusing to respond to various orders of this Court, and Local Rule 7(h) directing it to make and file its computations of claimed taxes due for the years 1962, 1963, 1964, 1965, 1967 and 1969, all of which are referred to in detail in the findings of fact and conclusions of law and judgments of July 10, 1970 and October 12, 1971. Reference is made to them, as well as to all of the other files and records in this case, and in the previous cases to show that the central issue involved in this case, viz., whether or not the receipt by "Chapman," the plaintiff herein, of $504,000 from the Long Beach Federal Savings and Loan Association in 1962 was a *loan* or a payment of a fee. That matter has been twice litigated, adjudicated and affirmed.

The findings above-referred to which were made in the within case found that the United States had no defense and that its actions in opposing the plaintiffs' claims in this case were vexatious, but plaintiffs point out that that vexatiousness has since been continued by the following incidents:

1. A refusal of the Internal Revenue Bureau to make payment of a tax refund (not part of the judgment), claiming that the plaintiffs were bankrupt, which was totally false, and which could have been easily verified by the Internal Revenue Bureau by a mere referral to the Social Security number of whoever the bankrupts were, and the Social Security numbers of both plaintiffs in this case, which appear on their income tax returns.

2. Sending a check to the plaintiffs Chapman in the sum of $15,421.06 on March 19, 1972 without any accompanying description of what it was for, saying in April 1972 it was "a computer's mistake," and in May 1972 claiming it was a payment on the July 10, 1970 judgment, and now demands it be returned as an overpayment.

3. A notice of assessment for $13,617.81 for 1971 taxes received by plaintiffs on July 10, 1972, the morning of the day of a hearing the Court had set for a hearing in order to determine, from the parties just what disputes remained and just how the litigation could be terminated and the judgments complied with. *But* the United States has never given plaintiffs any computation as to how they arrived at that sum.

4. On that same morning the United States Attorney thereafter appeared in court and stated that the Notice of Assessment was a mistake. But the United States is still claiming $13,231.60 of that amount and demanding that the plaintiffs pay that sum before the satisfaction of judgments are made in the within case. The Court understood from the statement of the United States Attorney that the whole claim was a mistaken claim for any additional taxes.

5. Refusal by the United States to make itemized claims for taxes for any of the years in question.

At the hearing on July 10, the Court made an Order requiring each side to submit proposed findings of fact and conclusions of law in order that the various contentions of the parties could be better understood. These were filed. The Court declines to accept either one of them, and is making the within Memorandum as its own Order.

A careful examination of the proposed findings of fact, conclusions of law and proposed orders submitted by the United States shows that should the Court comply with the Government's contentions,

it would be re-adjudicating the years 1962, 1963 and 1964, 1965, 1967 and 1969, which were adjudicated not only in the July 10, 1970 judgment affirmed October 28, 1970, but also in the October 12, 1971 modification of that judgment which also adjudicated the plaintiffs' 1971 loss affirmed March 15, 1972.

It is evident from an examination of all of the files and records in this case that in order to set at rest the issues that were raised concerning the 1962, 1963 and 1964 taxes of the plaintiffs herein, it was necessary to determine the 1965, 1967 and 1969 taxes and the 1971 loss of the plaintiff taxpayers. Or, putting it another way, the failure to adjudicate that loss in 1971 would result in the failure to determine the tax liability of the plaintiffs going back as far as 1962, determined by the judgments above-referred to, affirmed by the Court of Appeals. This is demonstrated by the demand in the telegram, Exhibit "A" attached to the defendant's proposed findings of fact of July 20, 1972, to the United States Attorney from someone in the Internal Revenue Bureau. Such demand was that plaintiffs refund overpayments for the year 1962, 1963 and 1964 in the total sum of $21,635.76.

That telegram also refers to a letter to the plaintiffs of June 19, 1972, wherein the defendants by their claims of taxes due, refuse to recognize this Court's judgments of October 12, 1971 as affirmed by the Circuit on March 15, 1972, allowing a loss in 1971 to the plaintiffs of $361,685.

■ The United States contends that this Court has no jurisdiction to make any judgment concerning the 1969 taxes and 1971 losses. There are two answers to that, either one of which is sufficient. The time to have raised that is long since past. This Court made the adjudication on the basis that the 1969 taxes and the 1971 losses are inextricably combined with the adjudications of 1962, 1963, 1964, 1965 and 1967 taxes, and that adjudication was affirmed by the United States Court of Appeals. And

while the defendant did not make that contention in this Court, it did make the contention in briefs on appeal to the United States Court of Appeals which, by affirmance of this Court's judgment on March 15, 1972, rejected the contention of the defendant that the Court had no jurisdiction.

■ Moreover the jurisdiction of the Court is amply supported by Title 28 U.S.C. § 1346, which by sec. (a) (1) authorizes a suit against the United States for the recovery of the Internal Revenue taxes, and subdivision (c), of Sec. 2 thereof confers jurisdiction "of any * * * demand whatever on the part of the United States against any plaintiff commencing an action under this section." This statute is to be liberally construed. Cherry Cotton Mills v. United States (1946), 327 U.S. 536. at 539, 66 S.Ct. 729, 90 L.Ed. 835.

The 1969 and 1971 taxes were inextricable issues in this case and, if not before, they were precipitated into it by the demands made in defendant's motion to change the Judgment of July 10, 1970 as affirmed by the U.S. Court of Appeals, which motion resulted in the Judgment of this Court of October 12, 1971, which was likewise summarily affirmed by the U.S. Court of Appeals.

The plaintiffs upon receipt of the unexplained check for $15,421.06 of March 19, 1972, promptly deposited the proceeds from such check in court, and the plaintiffs also deposited in court the check made in plaintiffs' favor from the United States in the sum of $6,214.70. So the plaintiffs have now on deposit in court the total sum of $21,635.76.

The plaintiffs concede that $13,231.60 is due to the United States for their 1971 income taxes and that there is due the United States the sum of $2,485.72 as payment of their 1969 income taxes, for a total sum of $15,717.32. The plaintiffs have moved the Court that the Clerk pay that sum of money to the United States and pay to plaintiffs the balance on deposit in court of $5,918.44.

■ By that means the plaintiffs will offset from the monies due the plain-

tiffs in the within case the total amount of taxes due on their 1969 and 1971 income taxes. They assert the authority to do so lies in Title 31, § 227, which reads as follows:

"§ 227. *Offsets against judgments against United States*

"When any final judgment recovered against the United States duly allowed by legal authority shall be presented to the Comptroller General of the United States for payment and the plaintiff therein shall be indebted to the United States in any manner whether as principal or surety, it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States; and if such plaintiff assents to such set-off, and discharges his judgment or an amount thereof equal to said debt, the Comptroller General of the United States shall execute a discharge of the debt due from the plaintiff to the United States. But if such plaintiff denies his indebtedness to the United States, or refuses to consent to the set-off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff.

Mar. 3, 1875, c. 149, 18 Stat. 481; Mar. 3, 1933, c. 212, Title II, § 13, 47 Stat. 1516."

The Government contends that Sec. 227 of Title 31 is not applicable, but that Title 26 U.S.C. § 6402(a) is a special statute and overrides Section 227 and permits the Secretary of the Treasury in his discretion to make such offsets. That section reads as follows:

"§ 6402. *Authority to make credits or refunds*

"(a) General rule.—In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person."

No adjudicated case has been found which deals directly with the Government's position in this respect. In every case cited, where the question is raised as to the right of the Comptroller General to make the offset that right has been sustained as a positive statutory duty of the Comptroller General. Cf. Cherry Cotton Mills v. United States (1946), 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835; Madden v. United States, (1967), 371 F.2d 469, 178 Ct.Cl. 121; United States v. Cohen, 389 F.2d 689 (5 Cir. 1967); Empire Ordnance v. Harrington (1957), 102 U.S.App.D.C. 14, 249 F.2d 680.

While no authority has been found dealing with what the United States asserts is a conflict between these two provisions, as pointed out in the *Cohen* case *supra*, the predecessor of the Comptroller General has been settling the Government accounts (389 F.2d at 690) since 1789, and since 1921 it has been the *duty* of the Comptroller General to make offsets of all Government claims to claims against the Government.

It was thus the *duty* of the Comptroller General to withhold by way of offset any claim the United States may have or

have had for any taxes, penalties or interest against the plaintiffs for the years 1962, 1963, 1964, 1965, 1967, 1969 and 1971. He has not done so.

It is also plain from reading the statutes that § 6402(a) of Title 26 is not applicable *where there is a judgment.*

It is noted that in the first few words of § 227 of Title 31 the section becomes applicable whenever there is *"any final judgment recovered against the United States duly allowed by legal authority . . ."* No reference is made in § 6402(a) of Title 26 to the matter of a judgment. And it is quite obvious that what § 6402(a) was intended to do was to give authority to the Secretary of the Treasury or his delegate to make offsets in cases other than where there is a *final judgment.* And that seems to be the nub of the Government's position here, viz., that the Commissioner of Internal Revenue can make his decisions and disregard the final decisions of the United States Court of Appeals. When a decision of the dignity of one from the United States Court of Appeals, or in the words of the statute "any *final* judgment" is recovered, then Section 227 steps in and controls over any voluntary or discretionary action of any kind of the Secretary of the Treasury or his delegate the Commissioner of Internal Revenue. To concede the correctness of the Government's position in this argument would be to negative all of the statutes, procedures, and judgments of all courts devised by law for the recovery of any taxes from the Internal Revenue Bureau by suit. Government counsel make much of the fact that prior to 1954 § 6402(a) of Title 26 was cast in mandatory language, viz., "shall," which by the 1954 amendment was changed to the word "may." As to that change, the House reported in its detailed discussion of the bill merely that

"This section changes existing law so as to permit expressly the crediting of interest on an overpayment against any outstanding liability for any tax"

(U.S.Code Congressional and Administrative News, Vol. III, 1954, page 4559).

It is the conclusion of the Court that the plaintiffs are entitled to make the offsets as moved by the plaintiffs.

Ordinarily the matter of entering satisfaction of judgment would be left to the parties. But in view of the failure of the United States to either answer the complaint or obey numerous orders of this Court, and in view of their present position of refusing to recognize the judgments of the United States Court of Appeals, as a final judgment, the Court feels justified in making an order that the Clerk perform the ministerial act of entering the satisfaction of the within Judgment.

Good cause appearing therefor,

It is hereby ordered that the Clerk convert the Interest Bearing Pass Book of All-State Savings and Loan Association for $15,421.06 and accrued interest to the Clerk's account and pay to the United States from funds on deposit the total sum of $15,717.32 in the following manner, viz., return to the United States by mailing to the United States Attorney the uncashed check in favor of Charles K. Chapman and Margaret O. Chapman now on deposit with the Court, dated May 8, 1972, in the sum of $6,214.70, and from the $15,421.06 deposited in Court by the plaintiffs, draw the Clerk's check to the United States in the sum of $9,502.62, and mail it to the United States Attorney, together with a copy of this Memorandum and Order and Satisfaction.

That the Clerk draw his check and pay to the plaintiffs from the remainder of the $15,421.06 heretofore deposited in Court by the plaintiffs the sum of $5,918.44, plus whatever sum of interest has then accrued and been paid on said All-State Savings and Loan account.

Under the terms of F.R.Civ.P. 70 the Clerk is ordered and directed to forthwith, upon making said payments as aforesaid, enter a full satisfaction of judgment.