William A. SNYDER, Jr., Personal representative under the will of Mary S. Fingles, Deceased,

v.

UNITED STATES.

Civ. A. No. N 82–2327.

United States District Court, D. Maryland.

Feb. 26, 1986.

See also 582 F.Supp. 196.

William A. Snyder, Jr., of Ober, Kaler, Grimes & Shriver, Baltimore, Md., pro se, as personal representative of the deceased, Mary S. Fingles.

Larry D. Adams, Asst. U.S. Atty., D. Md., and Michael J. Salem, U.S. Dept. of Justice, Washington, D.C., for defendant.

NORTHROP, Senior District Judge.

This action concerns the payment of a judgment as ordered by this Court on May 16, 1984. On July 19, 1985, the plaintiff, William A. Snyder, personal representative under the will of Mary S. Fingles, moved to enforce a judgment entered against the United States. Briefs were filed by both parties. Oral arguments were heard by the Court on November 7, 1985, and the Court has reviewed post hearing memoranda submitted by the parties.

Mary Fingles died on September 6, 1979, leaving an estate comprised primarily of shares of stock in a closely held corporation. On June 6, 1980, the plaintiff filed an

estate tax return for the estate of Mary S. Fingles, showing a net estate tax payable of $297,843.51. The plaintiff paid $53,-287.90 and elected to defer the balance of $244,555.61 in accordance with 26 U.S.C. § 6166. Under the terms of 26 U.S.C. § 6166, Congress has permitted those estates whose principal asset is a family business to pay their estate tax over a period of years. In 1979, when Mary Fingles died, owning The Fingles Company, § 6166 allowed an estate to spread the payment of the estate tax over 15 years; interest only at 4% would be due for the first five years and then principal and interest could be paid for the next ten years. At the end of the 15-year period, the entire tax would then have been paid. The Internal Revenue Service subsequently made an audit of the Fingles' estate tax, and on August 24, 1981, the District Director of Internal Revenue proposed to assess a deficiency in federal estate tax of $186,309.56.[1]

On January 20, 1982, the plaintiff paid the deficiency amount of $186,309.56, together with interest thereon of $36,812.73 for a total of $223,122.29, and subsequently sued in this court for a refund. A jury trial was held on January 26–27, 1984 in order to determine the value of the decedent's stock in The Fingles Company. The jury found that the stock was to be valued at $774,400. Subsequently, on May 16, 1984, the Court in a related decision determined that the plaintiff had overpaid the estate tax in the amount of $194,291.59[2] and entered judgment for the plaintiff in that amount, together with interest thereon from January 20, 1982 to the date of judgment. On December 31, 1984 the Internal Revenue Service credited the estate tax account of the Fingles estate in the amount of $194,291.59, thereby leaving an approximate balance of $26,000.00 in unpaid tax.[3]

The plaintiff contests the actions of the government on two distinct grounds. First, the government has not paid any pre- or post-judgment interest. The Court's ruling on May 16, 1984 ordered the government to pay $194,291.59 "together with interest thereon according to law from January 20, 1982, to the date of judgment." While the government did not credit the estate tax account until December 31, 1984, it contends that both pre-judgment and post-judgment interest has been credited to the plaintiff's estate tax account pursuant to established accounting set off procedures.

The second and paramount issue in this action is whether the United States is entitled to pay the Court-awarded judgment in the form of a credit in the instant case. The government's position rests on the language of Sections 6403 and 6402 of the Internal Revenue Code.

The government suggests that the determination by this Court that plaintiff overpaid his estate tax in the amount of $194,291.59, should be viewed as an overpayment of one of his installments under Section 6166. Section 6403 of the Internal Revenue Code provides that overpayments of installments may be credited against unpaid installments.

> In the case of a tax payable in installments, if the taxpayer has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments, if any. If the amount already paid, whether or not on the basis of installments, exceeds the amount determined to the correct amount of tax, the overpayment shall be credited or refunded as provided in section 6402.

26 U.S.C. § 6403.

Section 6402 of the Internal Revenue Code further permits the Internal Revenue

---

**1.** The IRS calculated that the stock should have been valued at $1.3 million. The plaintiff had valued the stock at $875,000.

**2.** The judgment was based on the following:
  a. $160,618.03 overpayment of tax
  b. $33,673.56 overpayment of interest

**3.** The government contends that it not only credited the amount of the judgment, but also, in some manner not fathomable by the Court, credited to the plaintiff pre-judgment interest as well.

Service to credit overpayments of taxes against other tax liabilities.

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect to an Internal Revenue Tax on the part of the person who made the overpayment and shall, subject to subsection (c), refund any balance to each person.

26 U.S.C. § 6402.

The United States reasons that after the Court's judgment, the taxpayer still owed the United States more than $220,000. in estate taxes. Therefore, § 6402 permits the Internal Revenue Service to credit the overpayment to the outstanding tax liability, which is precisely what was done. After crediting the amount of the overpayment and interest, the United States has reduced the estate's tax liability accordingly, creating a balance owed of more than $26,000.

The plaintiff opposes the application of § 6402 to the circumstances in the instant case. First, he contends that these sections were never intended to apply to cases in which there has been a Court awarded judgment. *Chapman v. U.S.*, 347 F.Supp. 89 (C.D.Cal.1972), *reversed on other grounds*. The plaintiff asserts that when there has been a Court awarded judgment in the taxpayer's favor, the proper mechanism for set-offs is stated in 31 U.S.C. § 3728 which provides:

> (a) The Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government.

In the instant case, the plaintiff contends that no such set-off against judgment has been instituted by the government, because no debt is presently owed to the government. According to 26 U.S.C. § 6166, the plaintiff has the legal right to defer payments of principal on the estate tax for five years. Therefore, the tax is not yet due.

The government does not dispute the plaintiff's assertion of the right of deferred payment. However, the United States does dispute the conclusion that all judgments are exempt from the overpayment provisions of §§ 6402 and 6403. In *Heinrich v. United States*, 340 F.Supp. 283 (N.D.Ill. 1971), the Court *in dicta* stated that the government may credit any overpayment of tax to an outstanding liability even when the overpayment results from a judicial determination. This Court is not prepared to state that under no circumstances can a judgment be set off against other tax liabilities under § 6402.

■ There is no doubt that § 6402 permits the Secretary of the Internal Revenue Service to credit an overpayment of tax to any tax then due to the United States. *Gates v. United States*, 409 F.2d 1320 (9th Cir.1969); *Thurman v. Studebaker Corp.*, 88 F.2d 984 (7th Cir.1937); *Acker v. United States*, 519 F.Supp. 178 (N.D.Ohio 1981).

■ The issue in the present case is whether § 6402 should apply to a situation where payment of the tax is deferred by law for ten years. The Court concludes it should not.

Internal Revenue Regulation 301.6402–1 states:

> The Commission, within the applicable period of limitations, may credit any overpayment of tax, including interest thereon, against any outstanding liability for any tax ... owed by the person making the overpayment....

The plaintiff asserts that if § 6402 and the accompanying regulation are to be interpreted in the manner suggested by the Internal Revenue Service, it would totally negate the benefits of deferred payments confirmed under § 6166. The plaintiff suggests that the proper application of § 6402 is to credit overpayments against taxes then due—not to liabilities which by law, become due in the future. The Court is persuaded by the merits of this argument.

■ Section 6166 creates a very valuable right for taxpayers in limited circumstances. Congress intended to grant relief

to those estates comprised primarily of family farms and family-owned businesses. Often, families were forced to liquidate or sell the business in order to satisfy the federal estate tax. In order to enable survivors of the decedent to continue to operate the family farm or business, the Congress enacted § 6166 to permit estates to pay the tax liability over a span of years. This is what the estate of Mary Fingles proposed to do. Had the parties involved in this action concurred in the first instance on the proper estate tax liability as later determined by the Court, there is no question that the estate tax could have been deferred under the provisions of § 6166. The plaintiff would have been entitled to pay interest only on the outstanding balance for the first five years, and then principal and interest for the next ten years. Such, however, was not the case. The United States claimed a deficiency of tax and interest in the amount of $223,122.29. The plaintiff paid the deficiency claimed by the government, and then sued for a refund. This Court on May 16, 1984 awarded the plaintiff a refund for overpayment for $194,291.59. If the judgment were to be credited to the deferred tax liability, this would have the effect of nullifying the benefits of deferred payments under § 6166.

It is inconceivable that Congress intended such a result. The purpose of § 6402(a) was aptly expressed in *A.G. Reeves Steel Const. Co. v. Weiss*, 119 F.2d 472, 476 (6th Cir.1941):

> The application of overassessments to underassessments is highly remedial with the obvious legislative intent to mitigate the burdens of taxpayers assessed with additional or deficiency taxes when such taxpayers have overpaid their taxes for other years....

In the case at bar, the Internal Revenue Service is not attempting to mitigate any burden of the taxpayer, but, *rather*, to deprive the taxpayer of the deferred payment benefit under § 6166.

26 U.S.C. § 6166(g) identifies events which terminate the deferred payment election and will force an acceleration of payment. The section lists such events as distribution or sale of ⅓ of the value of the business; withdrawals of ⅓ of the money or property in the business; or failure to timely pay an installment. Nowhere does the section state or imply that a judgment against the United States for overpayment should serve as the basis for acceleration of payments.

The Court is painfully concerned with the inherent injustice of the government's position—that when a taxpayer seeks redress to the Court to question an action taken by the government, and he ultimately prevails, he thereby subjects himself to the loss of other benefits provided to him by law. In conclusion, the Court holds that the United States may not simply credit the judgment awarded to the plaintiff for taxes deferred in accordance with 26 U.S.C. § 6166, but rather, must pay the judgment to the plaintiff.

■ The Court further rules that the plaintiff is entitled to payment of pre-judgment interest as previously ordered by this Court on May 16, 1984, and post-judgment interest as a matter of law.

28 U.S.C. § 2411 states:

> (a) In any judgment of any court rendered ... for any overpayment in respect of any internal revenue tax, interest shall be allowed at an annual rate established under [26 U.S.C. § 6621] of the Internal Revenue Code of 1954 upon the amount of the overpayment, from the date of the payment thereof to a date preceding the date of the refund check by not more than 30 days, such date to be determined by the Commissioner of the Internal Revenue.

The Secretary had determined that the rate of overpayments for the years involved were:

1. 12% from February 1, 1980—January 31, 1982 Rev. Rul. 79–336.
2. 20% from February 1, 1982—December 31, 1982 Rev. Rul. 81–260.
3. 16% from January 1, 1983—June 30, 1983 Rev. Rul. 82–182.
4. 11% from July 1, 1983—December 31, 1984 Rev. Rul. 83–76.
5. 13% from January 1, 1985—June 30, 1985

Rev. Rul. 84-159.
6. 11% from July 1, 1985—December 31, 1985
   Rev. Rul. 85-47.
7. 10% from January 1, 1986—June 30, 1986
   8A Stand. Fed. Tax Rep. (CCH) ¶5519K
   (1985)

Prior to 1983, statutory interest was simple interest only. However, 26 U.S.C. § 6222 provided that beginning on January 1, 1983 interest was to be compounded daily at the rate established under § 6621. The following calculations have been made pursuant to the law as outlined heretofor.

## Pre-Judgment Interest

### 1982

January 20, 1982—January 31, 1982

rate: 12% simple interest
days: 12
principal: $160,618.03
interest: $ 633.67

February 1, 1982—December 31, 1982

rate: 20% simple interest
days: 334
principal: $160,618.03
interest: $ 29,395.30

Total Pre-Judgment Interest in 1982: $30,028.97

### 1983

January 1, 1983—June 30, 1983

rate: 16% compounded daily
days: 181
principal: $224,320.56
   a) overpayment of tax: $160,618.03
   b) overpayment of interest: $ 33,673.56
   c) interest earned in 1982: $ 30,028.97
      Total: $224,320.56
interest: $ 18,519.04

July 1, 1983—December 31, 1983

rate: 11% compounded daily
days: 184
principal: $242,839.60
interest: $ 13,844.16

Total Pre-Judgment Interest in 1983: $32,363.15

### 1984

January 1, 1984—May 16, 1984

rate: 11% compounded daily
days: 137
principal: $256,683.76
interest: $ 10,818.03

Total Pre-Judgment Interest in 1984: $10,818.03

Total Pre-Judgment Interest: $73,219.20

## Post-Judgment Interest

### 1984

May 17, 1984—December 31, 1984

rate: 11% compounded daily
days: 229
principal: $267,501.74
interest: $ 19,110.26

Total Post-Judgment Interest in 1984: $19,110.26

<u>Pre-Judgment Interest</u>

<u>1985</u>

January 1, 1985—June 30, 1985

rate:      13%     compounded daily
days:      181
principal:   $286,612.05
interest:    $ 19,081.72

July 1, 1985—December 31, 1985

rate:      11%     compounded daily
days:      184
principal:   $305,693.77
interest:    $ 17,427.45

Total Post-Judgment Interest in 1985: $36,509.17

January 1, 1986—February 26, 1986

rate:      10%     compounded daily
days:      57
principal:   $323,121.22
interest:    $  5,084.90

Total Post-Judgment Interest in 1986: $5,084.90

Total Post-Judgment Interest: $60,704.33

---

The Court therefore concludes that the government must pay the following interest to the plaintiff:

Total Pre-Judgment Interest (1/20/82–6/16/84):

$73,210.20

Total Post-Judgment Interest (6/17/84–2/26/86):

$60,704.33

Total Interest Due:

$133,914.53

A separate Order will be issued confirming the findings made herein.