**DRG FUNDING CORPORATION,**
Appellant

v.

**SECRETARY OF HOUSING AND
URBAN DEVELOPMENT, et
al., Appellees.**

No. 94–5150.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 1995.

Decided Feb. 20, 1996.

John P. Cummins, III, Fairfax, VA, argued the cause and filed the briefs for appellant.

Fred E. Haynes, Assistant United States Attorney, argued the cause for appellees. With him on the brief were Eric H. Holder, Jr., United States Attorney, R. Craig Lawrence and Michael J. Ryan, Assistant United States Attorneys, and Steven M. Goldstein, Attorney, Department of Housing and Urban Development. John D. Bates, Assistant United States Attorney, Washington, DC, entered an appearance for appellees.

Before: WILLIAMS, GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Concurring opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

Concurring opinion filed by Circuit Judge GINSBURG.

RANDOLPH, Circuit Judge:

On July 3, 1990, the Department of Housing and Urban Development notified DRG Funding Corporation that it owed the government $3.7 million as a result of its default under a mortgage-backed securities program. A year later, having received no payment on the debt, HUD collected by withholding the $3.7 million from a judgment it was to pay the corporation.

HUD had warned the corporation that it would collect the debt through "administrative offset," and the corporation had responded by invoking HUD's administrative review procedures to demand that HUD dismiss the offset action. The corporation renewed that demand soon after HUD collected the debt, arguing before HUD's Chief Administrative Law Judge that the agency lacked authority to collect the debt by offset. An offset avoids " 'the absurdity of making A pay B when B owes A.' " *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). HUD regulations promulgated under the administrative offset provision of the Debt Collection Act of 1982, 31 U.S.C. § 3716, allow HUD to use offsets in certain situations. The corporation argued before HUD's Chief ALJ, however, that HUD lacked authority to effect an offset against a money judgment issued by a court against the United States. The ALJ denied the corporation's demand for dismissal, and its request for reconsideration, but granted the

corporation's motion to certify the question of HUD's offset authority for review by the Secretary of HUD.[1] On March 5, 1992, a designee of the Secretary issued a "determination" affirming the ALJ's decision that HUD had authority to effect the offsets and directing the ALJ "to proceed with the administrative process in accordance with [HUD's] regulations."

Rather than proceeding at the administrative level, the corporation filed suit in the district court challenging HUD's refusal to dismiss the offsets under the Administrative Procedure Act, 5 U.S.C. § 706, and asking the court to compel the Secretary of HUD to pay the judgment in full under the federal mandamus statute, 28 U.S.C. § 1361. The district court dismissed the suit on the ground that administrative review of the corporation's challenge was not yet final. We affirm.

■ The Administrative Procedure Act limits nonstatutory judicial review to "final" agency actions. 5 U.S.C. § 704. This serves several functions. It allows the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in "piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980). The requirement of a final agency action has been considered jurisdictional. *Public Citizen v. Office of the U.S. Trade Rep.,* 970 F.2d 916, 918 (D.C.Cir.1992). If the agency action is not final, the court therefore cannot reach the merits of the dispute.[2]

■ Different verbal formulations have been used to determine whether agency action is "final" within § 704's meaning. Is the

agency's action "sufficiently direct and immediate" and does it have a "direct effect ... on day-to-day business"? *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). Has the agency "completed its decisionmaking process" and is "the result of that process [one that] will directly affect the parties"? *Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992). Is the agency action "finally operative and decisive"? ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 103 (1947), quoted in *Darby v. Cisneros,* 509 U.S. 137, —— n. 10, 113 S.Ct. 2539, 2546 n. 10, 125 L.Ed.2d 113 (1993). Has the agency decisionmaker "arrived at a definitive position on the issue that inflicts an actual, concrete injury"? *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985), quoted in *Darby,* 509 U.S. at ——, 113 S.Ct. at 2543. On the other hand, courts have defined a nonfinal agency order as one, for instance, that "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action," *Rochester Tel. Corp. v. United States,* 307 U.S. 125, 130, 59 S.Ct. 754, 757, 83 L.Ed. 1147 (1939), cited in the ATTORNEY GENERAL'S MANUAL at 101–02, as a judicial construction of "final" that will carry over to § 704. And § 704 itself indicates that a "preliminary, procedural, or intermediate agency action or ruling" will be subject to judicial review only after there has been final agency action. *See* ATTORNEY GENERAL'S MANUAL 101, suggesting that the meaning of "final may be gleaned" from this provision.

No matter which of these formulations we apply, the result here is the same. The ruling of the Secretary's designee is not final agency action. That "determination," to use the agency's parlance, did not complete the

---

1. In the meantime, HUD notified the corporation that it had collected another $687,516 for a different debt through administrative offset against a second district court judgment. Administrative review of that offset was consolidated with the review of the first one, and both are before us now.

2. The corporation argues that the district court should have considered the merits here even if

the agency action were not final because, it says, the offset action involves an outright violation of a clear statutory right. *See Peter Kiewit Sons' Co. v. U.S. Army Corps of Engineers,* 714 F.2d 163, 168–69 (D.C.Cir.1983). Because the corporation failed to raise this argument below, we do not consider it now. *See Marymount Hosp., Inc. v. Shalala,* 19 F.3d 658, 663 (D.C.Cir.1994).

administrative proceedings, nor was it meant to do so. The determination specifically directed HUD's ALJ "to proceed with the administrative process in accordance with [HUD's] regulations." Under those regulations, the administrative process reaches the stage of "final agency action" only when a deputy assistant secretary makes a "determination of indebtedness" in a "written decision which includes the supporting rationale for the decision." 24 C.F.R. § 17.110(a). Until that happens, any intermediate decision in the review procedure is necessarily "tentative, provisional, or contingent," *see National Treasury Employees Union v. FLRA,* 712 F.2d 669, 671 (D.C.Cir.1983), and therefore nonfinal.

The corporation essentially acknowledged as much when it invoked HUD's "interlocutory ruling" procedure, 24 C.F.R. § 26.26, to seek the Secretary's review of the ALJ's decision. An "interlocutory" ruling is a provisional ruling, a ruling that does not end the controversy. The ALJ's ruling—and the designee's determination affirming it—did nothing more than deny the corporation's demand for dismissal. Orders setting cases for hearings despite objections to the agency's jurisdiction have long been considered nonfinal, *see Rochester Tel. Corp. v. United States,* 307 U.S. at 130, 59 S.Ct. at 757. Such an order is like a district court's denial of a motion to dismiss, which—unlike a final order ending the case—assures its continuation. *See, e.g., United States v. Rose,* 28 F.3d 181, 185 (D.C.Cir.1994). While the Judicial Code contains an exception allowing appeals from interlocutory district court orders (28 U.S.C. § 1292(b)), the Administrative Procedure Act has no such exception for interlocutory agency decisions.

■ Moreover, when the corporation first sought administrative review of HUD's offset action, it challenged both the validity of the debt and the way in which HUD had chosen to collect it. The designee's determination addressed only the latter issue. Neither the ALJ nor the designee has ruled yet on the validity of the debts themselves. Thus, while the designee has tentatively affirmed HUD's authority to collect such debts by offset, she has yet to consider whether the corporation

owes the government anything. This is no small matter. If HUD's administrative review ends with the conclusion that the corporation has no debt to HUD, the corporation will have no reason to seek a judicial determination of the proper procedure for collecting one. When completion of an agency's processes may obviate the need for judicial review, it is a good sign that an intermediate agency decision is not final. *See FTC v. Standard Oil,* 449 U.S. at 242, 101 S.Ct. at 494.

The agency action to date has not directly affected the parties or determined their rights or obligations. *See Capital Network Sys., Inc. v. FCC,* 3 F.3d 1526, 1530 (D.C.Cir. 1993). This is not a case in which "no further administrative proceedings are contemplated." *See Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. It is not a case in which "legal consequences will flow from the agency action" taken thus far. *See Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209–10, 27 L.Ed.2d 203 (1970). And it is not a case in which the intermediate decision of the agency will have a direct effect on the corporation regardless of the outcome of pending administrative proceedings. *See Chemical Waste Management, Inc. v. EPA,* 869 F.2d 1526, 1534 (D.C.Cir. 1989). Rather, the pending administrative proceedings—proceedings the corporation seeks to short-circuit—will determine the corporation's rights and obligations, and, as we have said, could avert judicial review altogether.

■ The corporation maintains that it will suffer great hardship if the court does not intercede now, yet claims of hardship "will rarely overcome the finality and fitness problems inherent in attempts to review tentative decisions." *Public Citizen Health Research Group v. Commissioner, Food & Drug Admin.,* 740 F.2d 21, 31 (D.C.Cir.1984). The corporation's claims of hardship are, at any rate, not particularly impressive. The corporation is bankrupt. It could not use the money even if it had it. Thus, the designee's determination cannot have a "direct effect" on the "day-to-day business" of the corporation, *see Abbott Laboratories,* 387 U.S. at 152,

87 S.Ct. at 1517, because the corporation has no "day-to-day business" to conduct. *Cf. Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). There simply cannot be any significant hardship in forcing a bankrupt corporation to wait for its money—if it has any coming—until the end of the administrative review process it began. In the meantime, the corporation is not being forced to choose between "disadvantageous compliance and risking serious penalties," *Public Citizen Health Research Group,* 740 F.2d at 31 (quoting 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE 369 (2d ed. 1983)), as was the plaintiff in *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430 (D.C.Cir.1986). In that case, the denial of immediate review would have left the plaintiff to choose between immediate compliance with an EPA labeling requirement—which it believed would result in a devastating loss in sales—and exposure to serious civil and criminal penalties. *Id.* at 439. The corporation faces nothing of the sort here. It is merely being forced to pursue its claim through the administrative process it invoked. If the corporation thinks that process is taking too long, it may seek relief under 5 U.S.C. § 706(1). If the corporation is unhappy with the outcome of that process once it has ended, it may seek judicial review then. At that point, HUD's ultimate decision on the proper collection procedures will have merged into its overall decision on the merits of the corporation's claims. *Contrast Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–26. In the meantime, we will not interfere with the work of the agency.

■■■ The district court also was right in not compelling the agency to pay the corporation before that work is done. At oral argument, the corporation attempted to por-

tray its case as nothing but a garden-variety attempt to enforce a judgment through the federal mandamus statute, 28 U.S.C. § 1361. While mandamus may be an appropriate way to enforce a judgment in some circumstances, *see Hines v. United States,* 105 F.2d 85, 93 (D.C.Cir.1939),[3] the district court chose not to go that route. Mandamus is an extraordinary remedy, available only if other relief is inadequate. *Women's Equity Action League v. Cavazos,* 906 F.2d 742, 751 (D.C.Cir.1990). As we have already indicated, the other relief available here is adequate: the bankrupt corporation may file suit after the administrative review is final.

*Affirmed.*

STEPHEN F. WILLIAMS, Circuit Judge, concurring:

In its action in the district court, DRG sought both review of HUD's refusal to dismiss its "administrative offset" proceedings against DRG, and mandamus to enforce DRG's previously acquired final judgment against HUD. If the statutory authority on which DRG relied were apt, circuit precedent would entitle DRG to mandamus to enforce its judgment, regardless of whether the administrative proceeding had reached a final decision or not. *Hines v. United States,* 105 F.2d 85 (D.C.Cir.1939) (applying 31 U.S.C. § 227, the predecessor of 31 U.S.C. § 3728). Because the statute is inapplicable, however, mandamus is unavailable.

\*    \*    \*

HUD rests its administrative offset on authority granted by 31 U.S.C. § 3716. That section, however, states that it does not apply "when a statute explicitly provides for or prohibits using administrative offset to collect the claim or type of claim involved." 31 U.S.C. § 3716(c)(2). DRG argues that an-

---

**3.** In *Hines,* this court used mandamus to compel the government to pay a judgment when "nothing" else remained to be done under the statutory scheme then in effect. 105 F.2d at 93. Here, something else does remain to be done: The administrative review procedures—set forth in regulations, authorized by statute, and invoked by the corporation—are not yet finished. Those procedures are not "nothing," and until they are completed, HUD's decision whether to pay the judgment cannot be considered "ministerial." *See id.*

*Hines* is thus inapposite for reasons other than those expressed in the concurring opinion, which offers an able dissertation on one of the issues the corporation is litigating before the agency—whether HUD may collect the corporation's debt by offset. Furthermore, outside the context of an argument it failed to raise below, *see* note 2, *supra,* the corporation never argued before this court that it is entitled to mandamus before there has been final agency action.

other section, 31 U.S.C. § 3728, is a statute explicitly providing such an alternative.[1] Section 3728 supplies the procedure for cases where a party has secured "a judgment against the United States Government presented to the Comptroller General," 31 U.S.C. § 3728(a), setting out a mechanism that requires the government, if it seeks an offset, to bring suit in district court on its offsetting claim:

§ 3728. Setoff against judgment

(a) The Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government.

(b) The Comptroller General shall—

. . . . .

(2)(A) withhold payment of an additional amount the Comptroller General decides will cover legal costs of bringing a civil action for the debt if the plaintiff denies the debt or does not agree to the setoff; and

(B) have a civil action brought if one has not already been brought.

31 U.S.C. § 3728. Section 3728 was enacted in 1875, restated in 1933, and left unchanged when Congress overhauled title 31 in 1982 by passing the Debt Collection Act, including § 3716. See 1982 U.S.C.C.A.N. 4301.

In *Hines v. United States* we read the predecessor version of § 3728, 31 U.S.C. § 227,[2] as saying that the United States cannot stave off enforcement of a judgment against itself, on grounds of some alleged offset, without filing suit against the plaintiff. Where it has failed to file suit, its duty to pay the judgment is purely ministerial and mandamus will lie. 105 F.2d at 93. "It takes nothing short of [institution of suit] to justify withholding money adjudged by a court to be payable by the government. This mandate of the law is not met by the administrative finding of indebtedness." *Id.* at 88. See also *National Bulk Carriers v. Warren*, 82 F.Supp. 511, 512–14 (D.D.C.1949) (following *Hines* in refusing to allow government to offset judgment against it without filing suit; without such suit, the act "requires that mandamus shall issue"); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 797–98 (2d Cir.1958) (noting that statute requires Comptroller General to institute legal proceedings to effect offset from judgment against the United States); *id.* at 806 (Medina, J., dissenting) (citing *Hines* for further proposition that mandamus is available to compel Comptroller General to pay judgment if he attempts offset without filing suit); *Chapman v. United States*, 347 F.Supp. 89, 94 (C.D.Cal.1972) (holding that in cases where taxpayer has obtained a judgment, predecessor of § 3728 overrides 26 U.S.C.

1. HUD says that DRG did not make "[t]he argument" to the district court, but must be referring to the exception to finality for an outright violation of a clear statutory right, for DRG clearly raised the substantive issue of its entitlement to mandamus under § 3728 before the district court and the ALJ.

2. 31 U.S.C. § 227 provided:

*Offsets against judgments against United States.* When any final judgment recovered against the United States duly allowed by legal authority shall be presented to the Comptroller General of the United States for payment, and the plaintiff therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States; and if such plaintiff assents to such set-off, and discharges his judgment or an amount thereof equal to said debt, the Comptroller General of

the United States shall execute a discharge of the debt due from the plaintiff to the United States. But if such plaintiff denies his indebtedness to the United States, or refuses to consent to the set-off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff.

§ 6402(a), which allows Secretary of the Treasury to offset tax refund if liability remains), *rev'd on other grounds,* 485 F.2d 1194 (9th Cir.1973). Cf. *Citizens Bank and Trust Co. v. United States,* 240 F.2d 863, 864 (D.C.Cir.1956) (citing *Hines* for proposition that mandamus lies against government officials to compel them to honor a money judgment); *Eastport Steamship Co. v. United States,* 130 F.Supp. 333, 334–35, 131 Ct.Cl. 210 (1955) (government may offset claim against money judgment only if it has filed suit on the claim; majority holds that judgment creditor's remedy is action for wrongful withholding while dissent says remedy is mandamus).

These cases are not inconsistent with the general proposition that mandamus is available only if other remedies are inadequate. See, e.g., *Women's Equity Action League v. Cavazos,* 906 F.2d 742, 752 (D.C.Cir.1990) (denying wide-reaching mandamus as substitute for statutorily provided causes of action), cited at Maj.Op. at 1216. Clearly the courts in *Hines* and the other cases were aware of the familiar doctrine, but regarded the government's proffered remedy of administrative process, followed by judicial review, as inadequate in light of the statutory right.

Further, the observation of the *Hines* court that "nothing" remained but the ministerial action of paying the judgment, compare Maj.Op. at 1216 n. 3, would be true here in precisely the same way it was true there, if § 3728 were applicable. *Hines's judgment* was final and the United States was claiming that, rather than pay the judgment or file suit on its offset, it was free to withhold payment because of the agency's administrative process. The court emphatically rejected the claim. Because the statute entitled the judgment creditor to payment unless the government filed suit, "nothing" remained to be done. 105 F.2d at 93. The statute did not allow an agency to withhold payment on a judgment simply on an administrator's say-so, whether final or not. *Id.* at 88.

HUD argues, however, that § 3728 is inapplicable because DRG's judgment against HUD is not a "judgment against the United States Government presented to the Comptroller General," the terms triggering § 3728.

HUD is an agency that may "sue and be sued," under 12 U.S.C. § 1702, and has an independent revolving fund for the payment of judgments. So the Comptroller General is simply not involved in payment of DRG's judgment.

So far as appears (and DRG has the burden of showing that it is within the terms of the statute), HUD is correct. Although one statute states that "[e]xcept as provided by the Contract Disputes Act of 1978, payment of final judgments rendered by a district court ... against the United States shall be made on settlements by the General Accounting Office," 28 U.S.C. § 2414, which the Comptroller General heads, 31 U.S.C. § 702(b), in practice the GAO's involvement is narrower. 31 U.S.C. § 1304(a) creates the judgment fund out of which payments certified by the Comptroller General are paid, but the judgment fund is used only if "payment is not otherwise provided for." *Id.* § 1304(a)(1). According to a GAO publication, where a sue-and-be-sued agency conducts a business-type program funded by a revolving or special fund, judgments arising from the program are payable by the agency from the fund. U.S. General Accounting Office, Office of the General Counsel, *Principles of Federal Appropriations Law* (2d ed. 1994), 14–38. Here the parties agree that DRG's judgment would—at least nominally—be paid from HUD's General Insurance Fund, thereby short-circuiting the Comptroller General.

DRG responds, however, that in another litigation the government successfully thwarted an effort by DRG's creditors to garnish its judgment against HUD by persuading the court that in fact that judgment was against the United States. Because HUD's General Insurance Fund has been operating at a great loss for many years, the court found, it is funded by "what amounts to a permanent appropriation of funds from the U.S. Treasury," and, "[a]s a practical matter," payment of DRG's claims "would expend itself on the public Treasury." *The Business Bank v. DRG Funding Corp.,* Civil Action No. 91–1985–SSH, Mem.Op. 10–11 (E.D.Va. July 16, 1993).

I assume in DRG's favor that the government is bound on the point by judicial estoppel, i.e., that having won a judgment on one premise it cannot turn tail and repudiate its success in another litigation. Compare *Southern Pacific Transp. Co. v. ICC,* 69 F.3d 583, 591 n. 3 (D.C.Cir.1995) (noting our circuit's past rejection of judicial estoppel), with *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540, 1547–49 (7th Cir.1990) (analyzing and applying judicial estoppel). But even if the prior decision conclusively establishes that DRG's judgment is against the United States for purposes of limits on garnishment arising out of sovereign immunity doctrines, that would fail to establish that DRG's judgment is a judgment "against the United States Government presented to the Comptroller General" under 31 U.S.C. § 3728. DRG treats § 3728's reference to the Comptroller General as an irrelevant frill, but as a court we are not free to adopt so cavalier an attitude. After all, in a statute expressly spelling out duties of the Comptroller General, it would be odd to treat him and his presence as inconsequential.

There is little authority on the subject. *Principles of Federal Appropriations Law* notes that the general issue of application of § 3728 to judgments not payable through GAO is unresolved and that the tax cases involving offset have produced no consensus. *Id.* at 14–77. Our circuit held in *Empire Ordnance Corp. v. Harrington,* 249 F.2d 680, 682 (D.C.Cir.1957), that taxpayers who had obtained a judgment from the Tax Court, which the Internal Revenue Service was attempting to offset under 26 U.S.C. § 6402 (providing for offset of tax refunds), were not entitled to mandamus on their judgment. The opinion did not mention *Hines,* and indeed only mentioned the predecessor to § 3728 in passing, without noting the requirement that the government file suit. District courts have taken conflicting views of the IRS's powers under 26 U.S.C. § 6402. Compare *Chapman v. United States,* 347 F.Supp. 89, 94 (C.D.Cal.1972) (stating that IRS's authority to make offsets under § 6402(a) has no application where the taxpayer has secured a judgment that triggers application of the predecessor to § 3728),

with *Heirich v. United States,* 340 F.Supp. 283, 284 (N.D.Ill.1971) (where judgment for taxpayer was offset by IRS under § 6402(a), taxpayer must move before the district court to execute the judgment, and in such a proceeding, the merits of the government's claim of a deficiency may be fully litigated). Cf. *Snyder v. United States,* 630 F.Supp. 182, 184 (D.Md.1986) (dictum approving of *Heirich* ).

DRG contends that HUD's own Administrative Offset Regulations conflict with the literal reading of the statute and should control. Indeed, those regulations explicitly state: "Collection by offset against a judgment obtained by a debtor against the United States will be accomplished in accordance with 31 U.S.C. § 3728." 24 CFR § 17.116. Moreover, the definitions section states that "United States includes an agency of the United States," and "agency" means, among other things, "an Executive department" or "Government corporation" as defined in 5 U.S.C. §§ 101 or 103. 24 CFR § 17.60(b). Not surprisingly, HUD is an executive department according to 5 U.S.C. § 101, and the Government National Mortgage Association (against which DRG's judgment also runs) is a government corporation. See 5 U.S.C. § 103 (identifying government corporations); 12 U.S.C. § 1717(a)(2)(A) (establishing Ginnie Mae as a "body corporate" without capital stock within HUD). But because HUD is not vested with the enforcement of 31 U.S.C. § 3728, which is directed to the Comptroller General, I do not see why we should defer to its interpretation. See *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990) ("A precondition to deference under *Chevron [U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ] is a congressional delegation of administrative authority."); *Crandon v. United States,* 494 U.S. 152, 177, 110 S.Ct. 997, 1011, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring in the judgment) ("specific responsibility for administering the law" is necessary to trigger *Chevron* deference); *Professional Reactor Operator Society v. NRC,* 939 F.2d 1047, 1051 (D.C.Cir.1991) (refusing to apply *Chevron*

deference to NRC's interpretation of the APA, citing *Adams Fruit Co.* and *Crandon* ).

Because DRG has failed to show that the provisions for payment of its judgment bring it within the terms of § 3728, I concur in the judgment affirming the district court's denial of mandamus.

GINSBURG, Circuit Judge, concurring:

To the extent that the appellant argues that HUD's decision to effect a prior administrative offset was itself a "final agency action," I agree with Judge Randolph's emphatic rejection of the point. The appellant raises an additional argument, however, that the court gives too short shrift; the appellant's alternative argument is that the agency action is reviewable under the collateral order doctrine laid out in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). I write separately to address that argument, though I think it ultimately unavailing.

In *Cohen,* the Supreme Court adopted a "practical" construction of the concept of finality, holding that under limited circumstances an order that does not actually end a litigation may nonetheless be reviewed as a "final" order. 337 U.S. at 546, 69 S.Ct. at 1225–26. To be appealable under *Cohen,* an order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). These requirements "help qualify for immediate appeal classes of orders in which the considerations that favor immediate appeals seem comparatively strong and those that disfavor such appeals seem comparatively weak. The requirement that the issue underlying the order be 'effectively unreviewable' later on, for example, means that failure to review immediately may well cause significant harm." *Johnson v. Jones,* —— U.S. ——, ——, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995).

As the Supreme Court has explained in its recent commentaries on *Cohen,* the collateral order doctrine "is best understood not as an exception to the final decision rule . . . but as a practical construction of it." *Swint v. Chambers County Commn.,* —— U.S. ——, ——·——, 115 S.Ct. 1203, 1207–08, 131 L.Ed.2d 60 (1995); *Digital Equipment Corp. v. Desktop Direct, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1992, 1995, 128 L.Ed.2d 842 (1994). Accordingly, we review the collateral order of a district court as a "final decision" under 28 U.S.C. § 1291, not as an interlocutory order under § 1292(b). *See Swint,* —— U.S. at ——, 115 S.Ct. at 1208.

The counterpart to § 1291 in the Administrative Procedure Act is 5 U.S.C. § 704, which provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." Our analysis of the finality requirement imposed by the APA is properly informed by our analysis of that requirement in § 1291. As we noted in an analogous situation, comparing § 1291 and the provision of the Communications Act that authorizes judicial review of "final orders" of the FCC, "[b]oth provisions reflect the reasoned policy judgment that the judicial and administrative processes should proceed with a minimum of interruption. To effectuate this common purpose, courts have permitted interlocutory appeals under both statutes only in exceptional cases, a requirement that partakes of similar meanings in both contexts." *Community Broadcasting of Boston, Inc. v. FCC,* 546 F.2d 1022, 1024 (D.C.Cir.1976). Although one circuit has questioned whether the collateral order doctrine has a place in administrative law, *see R.R. Donnelley & Sons Co. v. FTC,* 931 F.2d 430, 432 (7th Cir.1991) (Easterbrook, J.), it seems to me that the Supreme Court foreshadowed just that when it transplanted the practical construction of finality in *Cohen* to the finality requirement of the Social Security Act:

> [T]he nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. The role these factors may play is illustrated by the intensely "practical" approach which the court has adopted, *Cohen v. Beneficial Industrial Loan Corp.,* . . . when applying

the finality requirements of 28 U.S.C. § 1291 ... and 28 U.S.C. § 1257, which empowers this Court to review only "final judgments" of state courts. [Citations omitted.] To be sure, certain of the policy considerations implicated in §§ 1257 and 1291 cases are different from those that are relevant here. [Citations omitted.] But the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable.

*Mathews v. Eldridge,* 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 901 n. 11, 47 L.Ed.2d 18 (1976); *see also Federal Trade Commn. v. Standard Oil Co.,* 449 U.S. 232, 246, 101 S.Ct. 488, 496, 66 L.Ed.2d 416 (1980) (APA case holding not collateral an order that did not involve "claims of right separable from, and collateral to, rights asserted in the action" (quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1226)); *Community Broadcasting,* 546 F.2d at 1024–28 (Communications Act case holding order not reviewable under *Cohen* because not "effectively unreviewable" at later stage).

To the extent that *Cohen* may be applied in the administrative law context, then, the conclusion that an agency order does not terminate the underlying administrative proceedings—in other words, that it is interlocutory—does not resolve the question of finality. If the interlocutory decision nonetheless satisfies the elements set out in *Cohen,* the decision may be deemed "final" for the purpose of judicial review.

If DRG were an operating business, then the agency's decision to effect a prior administrative offset in this case might well satisfy the requirements of *Cohen.* The determination by the Secretary's designee that the judgment owed by HUD was not "a judgment against the United States Government presented to the Comptroller General" under 31 U.S.C. § 3728 resolved an important issue entirely separate from the merits of DRG's indebtedness, and counsel for the Government as much as assured us that this determination is "conclusive."

In fact, however, DRG is not operating. It is in liquidation pursuant to Chapter 7 of the Bankruptcy Code. This is fatal to its argument under the collateral order doctrine because DRG presently suffers no harm by reason of judicial review being deferred. The question whether HUD could effect the offset without complying with § 3728 may therefore be reviewed just as well at the conclusion of the underlying proceeding—if DRG is aggrieved by the outcome.

Because DRG has not shown that the agency order at issue either has the ordinary indicia of finality or meets the requirements of the collateral order doctrine, that order is presently unreviewable. I therefore concur in the judgment affirming the district court's dismissal of DRG's petition for a writ of mandamus.