HORACE H. DRUMMOND
AND
DRUMMOND'S POULTRY TRANSPORTATION SERVICE
*vs.*
MAINE EMPLOYMENT SECURITY COMMISSION

Kennebec.    Opinion, August 16, 1961.

*Irving Isaacson,*
*Brann & Isaacson,* for plaintiffs.

*Frank A. Farrington, Deputy Atty. Gen.,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
DUBORD, SIDDALL, JJ.

TAPLEY, J.    On report.    The action is one of a petition
for declaratory judgment.    It comes to this Court from the
Superior Court, with a stipulation that the cause is to be
decided upon the basis of the complaint and the answer.
The allegations contained in the petition for declaratory
judgment are taken to be true.    Plaintiff, Horace H.

Drummond, was engaged in the business of transporting live poultry from the various farms upon which they were raised in the State of Maine to a processing plant in Winslow, Maine. In the conduct of his business he engaged employees to drive his trucks to the various farms on which the poultry was located, catch, crate and transport the poultry from the farms to the processing plant. The services performed by these employees constituted "agricultural labor," as defined in Sec. 3-I, Chap. 29 of R. S. 1954 and the wages paid for said services were exempt from unemployment taxes. During the years 1954 and 1955 plaintiff Drummond paid unemployment taxes in the sum of $3510.11, with respect to the exempt services performed by the employees.

Plaintiff, Drummond's Poultry Transportation Service, is a corporation organized by Horace H. Drummond and engaged in the same business as was previously conducted by Mr. Drummond in his individual capacity. The business is carried on in exactly the same manner as it was when Mr. Drummond operated it individually. The services performed by the employees of the corporation also constituted "agricultural labor" as defined in Sec. 3-I, Chap. 29, R. S. 1954 and the wages paid were exempt. During the years 1956 and 1957 Drummond's Poultry Transportation Service paid unemployment taxes to the State of Maine on exempt wages in the sum of $5094.87.

Plaintiff, Horace H. Drummond, filed a claim with the Maine Employment Security Commission on June 3, 1957 for a refund of unemployment taxes paid on exempt wages amounting to $3510.11. On the same day plaintiff, Drummond's Poultry Transportation Service, also filed a claim for refund, for the same reason, in the amount of $5094.87.

On June 2, 1960 the Maine Employment Security Commission granted a refund of unemployment taxes with re-

spect to the claim of Horace H. Drummond in the sum of $1914.11.

The Maine Employment Security Commission on June 2, 1960 granted a refund of unemployment taxes in the sum of $427.46 on the claim for refund of Drummond's Poultry Transportation Service.

The Commission deducted from each refund the amount of unemployment benefits paid to claimants who were former employees of the plaintiffs. These benefits were based, in part, on wages paid to them by the plaintiffs which wages were used for the purpose of determining the claimants' wage class and weekly benefit amount under the provisions of Sec. 13-II of Chapter 29. The Commission in determining the amount of benefits payable to the former employees of the plaintiffs included in their base period wages the *uninsured* wages paid by the plaintiffs during such base period. The increased weekly benefit resulting from the inclusion of uninsured wages occasions the deductions, $1596.00 in the case of plaintiff Drummond and $2941.00 in the case of plaintiff, Drummond's Poultry Transportation Service, from the total refund claim.

The plaintiffs contend (1) that payment by the Commission of excess benefits in the amount of $4537.00 to former employee claimants of the plaintiffs was illegal because the Commission erroneously included wages for uninsured work in computing claimants' wage class and weekly benefit amount under Sec. 13-II; (2) the Commission, by administrative action, without notice to the plaintiffs and without affording them any opportunity to protect their interests, illegally paid excessive benefits and now seeks to reduce a claim for refunds by the amount of such illegal payments.

The defendant Commission argues that the deductions represented by the amount of benefits paid were not only

proper deductions but were required under provisions of Sec. 19-IV of the Act.

It is without contention that the services performed for the plaintiffs did not constitute "employment" within the meaning of Maine Employment Security Law; that the wages involved were not paid on "insured work"; that the contributions were "erroneously collected" and never should have been paid.

The Commission bases its right to make the deductions from the refunds on the authority of Sec. 19-IV. The pertinent portion of this section is recited immediately following:

> "IV. *Refunds.*—If not later than 4 years after the date on which any contributions or interest thereon became due, an employer who has paid such contributions or interest thereon shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be made, and if the commission shall determine that such contributions, or interest or any portion thereof *was erroneously collected,* the commission shall allow such employer to make an adjustment thereof, without interest, in connection with subsequent contribution payments by him, or if such adjustment cannot be made the commission shall refund said amount, without interest, from the fund. For like cause and within the same period, adjustment or refund may be so made on the commission's own initiative. *Provided, however, that any such adjustment or refund, involving contributions with respect to wages upon the basis of which benefits have been paid for unemployment, shall be reduced by the amount of benefits so paid.\*\*\*\*."* (Emphasis supplied.)

The facts require a review and an analysis of the law as to the authority of the Commission to refund and the

right of the plaintiffs to be repaid taxes which were, in the first instance, erroneously paid. The law is well settled in this State that taxes illegally assessed and voluntarily paid cannot be recovered. In *Creamer* v. *Bremen,* 91 Me. 508, at page 514, the Court said:

> "But it is further claimed that this suit can not be maintained because the payment of the tax by the plaintiff was voluntary. It is undoubtedly true that when money claimed to be rightfully due is paid voluntarily and with a full knowledge of the facts, it can not be recovered back, if the party to whom it has been paid may conscientiously retain it; and even taxes illegally assessed, if paid voluntarily can not be recovered."

The case of *Coburn* v. *Neal, et al.,* in 94 Me. 541 holds that when a voluntary payment is made, even though under a mistake of law, it cannot be recovered. The principle of law applicable here is aptly stated in 84 C. J. S., Taxation, Sec. 632 a. (1):

> "While a state has power to authorize the refund of taxes paid, the authority to refund must be conferred by a valid statute. Although the legislature has no power to compel the refund of taxes legally collected, it may prescribe the limitations and conditions on which a refund may be had, and may withdraw the right to a refund; and the repeal of a statute authorizing a refund takes away the right of the citizen to claim a refund and of the public officers to make it, and also terminates all pending actions. In the absence of statutory authority, no executive or administrative officer or board has power to refund taxes; and, if the power is given to him or it by law, it must be strictly followed.
>
> "Where a statute providing for a refund of excessive or erroneous taxes paid is general in its terms, it applies to voluntary, as well as to involuntary or compulsory, payment, or payment under protest. A taxpayer seeking relief under a refund statute must bring himself within its terms."

> "****** no executive or ministerial officer has authority to refund taxes, unless such authority is expressly conferred. The Legislature has power to provide how taxes, after reaching the treasury, may be refunded. ******." Cooley, Taxation, Vol. 3, Sec. 1259.

> "A refund of taxes is solely a matter of governmental grace **** and any person seeking such relief must bring himself clearly within the terms of the statute authorizing same." *Asmer* v. *Livingston, et al.*, 82 S. E. (2nd) 456, 466 (S. C.).

An Indiana case, *Culbertson* v. *Board of Commissioners of Fayette County,* 194 N. E. 638, concerns a refund of taxes under a statute providing such refund of taxes paid on wrongfully assessed property. This case supports the doctrine that at common law there could be no refund of taxes voluntarily paid, and that the only relief would be statutory and such statutory remedy is exclusive. See also *Board of Commissioners* v. *Milliken, et als.,* 190 N. E. 185 (Ind.).

Under the circumstances of this case, the plaintiffs have no right to a refund except by virtue of the statute. The Legislature, by the enactment of Sec. 19, sub-sec. IV, authorizes an adjustment or a refund if the Commission shall determine that the contributions were *erroneously collected.* The Legislature, however, restricts the adjustment or refund by this language:

> "Provided, however, that any such adjustment or refund, involving contributions with respect to wages upon the basis of which benefits have been paid for unemployment, shall be reduced by the amount of benefits so paid."

The Commission had no authority or legal right to refund the total amount of contributions but only those amounts which remained after deducting the benefits paid. The fact that the benefits were erroneously and illegally

paid to the recipients matters not insofar as this litigation is concerned, as Sec. 19, sub-sec. IV makes no provisions for such circumstances and the Commissioners' refunding power cannot exceed the authority as defined in the Act.

The results arrived at in this opinion are predicated on the established law in this State that taxes voluntarily paid cannot be refunded unless the statute so provides. Sec. 19-IV makes no provisions for refunds to the taxpayer of benefits illegally paid to former employee claimants of any taxpayer.

For this reason, we find it unnecessary to consider issue (2).

The Commission was correct in deducting the amounts paid to the unemployment beneficiaries and allowing refunds to the plaintiffs for the balance of the contributions erroneously paid.

*Cases remanded to the Superior Court for entry of judgments in accordance with this opinion.*