ESTATE OF Benjamin SHAPIRO, Deceased, Saul A. Shapiro, Executor, and Stephen Shapiro, Executor, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 876, Docket 96–4009.

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1997.

Decided April 9, 1997.

Myron S. Schulman, Scarsdale, NY (Bernard S. Mark, Richard S. Kestenbaum, Kestenbaum & Mark, Great Neck, NY, of counsel), for Petitioners–Appellants.

David English Carmack, Tax Division, United States Department of Justice, Washington, DC (Loretta C. Argrett, Assistant Attorney General, Pamela C. Berry, Tax Division, of counsel), for Respondent–Appellee.

Before: JACOBS, CALABRESI, and LAY,* Circuit Judges.

CALABRESI, Circuit Judge:

In *Estate of Bell v. Commissioner,* 928 F.2d 901, 903–04 (9th Cir.1991), the Ninth Circuit held that if a taxpayer, who has elected to defer estate tax liability pursuant to I.R.C. § 6166, overpays an installment of that tax, the amount of the overpayment will be credited against future installments rather than refunded to the taxpayer. Relying on *Estate of Bell,* the Tax Court in the case before us refused the taxpayer's request for a refund of its alleged overpayments. It is possible that the Tax Court placed more weight on *Estate of Bell* than that decision can safely bear. Nonetheless, since we find that the taxpayer did not, in fact, overpay its

---

* The Honorable Donald P. Lay, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

installments, we affirm the Tax Court's decision without reaching the issue.

## BACKGROUND

Benjamin Shapiro (the decedent) died testate on July 2, 1986. His estate, the petitioner-appellant in this case ("the Estate"), filed a tax return reporting the total amount of estate tax owed as $1,197,127.

Normally, estate tax payments are due within nine months of the decedent's death. *See* I.R.C. §§ 6075(a), 6151(a). Where the value of a decedent's interest in a closely-held business exceeds 35% of the decedent's adjusted gross estate, however, the estate may, pursuant to I.R.C. § 6166(a), elect to defer payment of the federal estate tax attributable to the value of that interest.[1] Section 6166 allows the estate to pay the portion of the estate tax attributable to the interest in the closely-held business in up to ten equal installments beginning five years after the tax would otherwise be owed. A taxpayer electing to defer estate taxes pursuant to § 6166 must nonetheless make annual payments of interest on the unpaid portion of the federal estate tax liability during the deferral period. I.R.C. § 6166(f). When the taxpayer fails to make such interest or installment payments, the Internal Revenue Service (the "IRS") may demand payment of the full unpaid portion of the deferred estate tax liability. I.R.C. § 6166(g)(3).

Since Shapiro's interest in his closely-held business, Benjamin Shapiro Realty Co., represented 95% of the adjusted gross estate, the Estate elected to take advantage of the deferral provisions of § 6166 and to pay the vast majority of its estate tax liability in 10 annual installments beginning on April 2, 1992.

In arriving at a total tax liability of $1,197,-127, the Estate claimed a credit of $460,751 under I.R.C. § 2013. That section allows a credit for the federal estate tax that was paid with respect to the prior transfer of property

to the decedent from a person who died in the ten years before the decedent's death.[2] In this case, the credit sought was based on the estate tax paid on the transfer of a trust interest to Shapiro from his wife upon her death. In September 1990, the IRS issued a statutory notice of deficiency in the amount of $208,540.56. This deficiency was attributable to the IRS's partial disallowance of the § 2013 credit. The Estate brought an action in the Tax Court to determine whether that disallowance was proper. On October 20, 1993, the Tax Court found for the Estate, ruling that it had properly calculated the § 2013 credit. *See Estate of Shapiro v. Commissioner,* 66 T.C.M. (CCH) 1067, 1993 WL 415532 (1993).

In the meantime, however, the IRS had been demanding interest payments and, later, installment payments on the deferred estate tax. The Estate made these payments, but in amounts less than the IRS had sought. The Estate arrived at these lower amounts on the following theory.

Pursuant to I.R.C. § 2053(a)(2), annual interest payments owing as a result of a § 6166 election are allowed as an "administration expense" deduction against the decedent's federal estate tax liability. *See* Rev. Rul. 78–125, 1978–1 C.B. 292; *Estate of Bahr v. Commissioner,* 68 T.C. 74, 1977 WL 3655 (1977), *acq.* 1978–1 C.B. 1. Since, however, it is not possible to ascertain the amount of the annual interest expenses until these "administration expenses" actually accrue, no deduction is allowed for as yet unaccrued interest expenses. *See Estate of Bailly v. Commissioner,* 81 T.C. 246, 252, 1983 WL 14862, *modified,* 81 T.C. 949, 1983 WL 14903 (1983). Accordingly, these deductions, which are not reflected in the estate's original tax return, are not taken into account by the IRS in calculating the size of the annual interest payments and installment payments that will come due each year under the § 6166 election. Relying on Revenue Procedure 81–27,

---

**1.** "The purpose of section 6166 is to prevent the forced liquidation of closely held businesses because substantial estate taxes must be paid." *Estate of Bell,* 928 F.2d at 902.

**2.** The credit is calculated by a complicated process that takes into account, among other things, the length of time between the transferor's death and the decedent's death.

1981–2 C.B. 547,[3] the Estate believed that it was allowed to recompute the amount of its estate tax liability, and hence of its annual payments, to reflect the § 2053(a)(2) administrative expenses as these deductions accrued. It did so unilaterally, and, as a result, paid the IRS less than the amounts billed.

Refusing to accept the Estate's supplemental tax returns, which took into account deductions for these accrued interest expenses, the IRS assessed penalties and interest on the difference between the amounts it demanded and the amounts it actually received. The Estate continued to make payments in accordance with the amounts that it believed it owed, and refused to pay those penalties or that additional interest.

Finally, on January 22, 1993, the IRS informed the Estate that it was planning to file notice of a Federal tax lien to seize the unpaid amounts. When the Estate's motion to restrain the IRS's tax collection was denied by the Tax Court, the Estate gave in and paid in full the amount that the IRS claimed it owed, including all past due amounts, plus penalties and interest thereon.

Later that year, however, when the Tax Court rendered its decision on the § 2013 credit issue, it became clear that the Estate had already paid to the IRS more than its total federal estate tax liability. The Tax Court therefore ordered the parties to submit Rule 155 computations to determine how much money the Estate had overpaid the IRS.[4] Both parties agreed that there had been a payment of $225,118.50 in excess of the Estate's final total tax liability, and the IRS refunded that amount to the Estate.

But the Estate also requested in its Rule 155 computation that the IRS return to it an additional $478,840.07, the sum that it claims represents taxes that would ultimately be payable, but that it had paid prematurely as a result of the IRS's failure to allow it to recalculate what it owed as it made interest payments, and hence accrued administrative expense deductions under § 2053(a)(2).[5] According to the Estate, if the IRS had not improperly refused to allow it to take these deductions as it went along, the Estate would not yet have paid the $478,840.07. The Estate therefore demanded that the IRS return that money (with interest) and allow the Estate to pay it later in annual installments, pursuant to its § 6166 election.

On October 31, 1995, the Tax Court rejected the Estate's request:

> Petitioner's argument that the Court should order respondent to return the estate tax that petitioner characterizes as having been prematurely paid is in direct conflict with this Court's holding in *Estate of Bell v. Commissioner*, 92 T.C. 714, 1989 WL 28331 (1989), *aff'd*, 928 F.2d 901 (9th Cir.1991). In short, *Estate of Bell* stands for the proposition that, consistent with the plain language of [I.R.C. § ] 6403, an overpayment of an estate tax installment payment under section 6166(a) shall be credited against any unpaid installments. In the instant case, respondent credited all of petitioner's overpayments to unpaid estate tax installments leaving an overpayment of $225,118.50. We find *Estate of Bell* to be controlling under the circumstances presented, and, therefore, we reject petitioner's proposed decision.

This appeal followed.

## DISCUSSION

Since the questions presented in this case are ones of law, our review is *de novo*. *See, e.g., E. Norman Peterson Marital Trust v. Commissioner*, 78 F.3d 795, 797 (2d Cir.1996) ("We review the Tax Court's legal conclusions *de novo*.").

---

**3.** This Revenue Procedure is discussed in Part II, *infra*.

**4.** Tax Court Rule 155 establishes the procedure by which the parties determine the financial implications of a Tax Court decision. Each party submits its own calculations, and, if there is a discrepancy, the court resolves it. *See* Tax Ct. R. 155; *LeFever v. Commissioner*, 100 F.3d 778, 791 n. 6 (10th Cir.1996).

**5.** There is no dispute that the Estate was eventually given the deductions to which it was entitled under § 2053(a)(2). The Estate's argument is that it should have been given those deductions at the time that it made its interest and installment payments, thereby reducing the size of these payments.

· This case poses two distinct questions. The first is whether the Estate is correct that it should have been permitted to recalculate its estate tax liability, and thus reduce its periodic payments, to take into account the interest deductions provided for in § 2053(a)(2) as the interest accrued. The second is whether, if the Estate was improperly denied its right to do this, its "overpayments" should now be returned to it, with interest, so that it may repay them over time pursuant to § 6166. Because the Tax Court found against the Estate on the second question, it did not reach the first one. We believe that the second issue may be more complicated than the Tax Court implied. Nonetheless, because we find against the Estate on the first issue, we affirm the Tax Court's decision.

We begin with the second issue.

### I. Refund of alleged overpayments

Under I.R.C. § 6402, a taxpayer that overpays a federal tax liability may obtain a credit against any other federal tax liability or a refund of the overpayment through the filing of an administrative claim. However, I.R.C. § 6403 qualifies that provision by providing:

> In the case of a tax payable in installments, if the taxpayer has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments, if any. If the amount already paid, whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax, the overpayment shall be credited or refunded as provided in section 6402.

In *Estate of Bell v. Commissioner*, 928 F.2d 901, 903 (9th Cir.1991), the Ninth Circuit held that "[s]ection 6403 is clear and unambiguous; it applies to 'a tax payable in installments.' Section 6166 deferred payments are clearly taxes payable in installments." The Ninth Circuit therefore rejected the estate's claim that it "had the privilege" to receive a refund of its overpayments and "continue deferring [its] estate taxes as though the proper tax liability

had been determined at the outset." *Id.* at 902.

While the IRS contends that *Estate of Bell* governs this case, the Estate attempts to distinguish it on factual grounds. Specifically, *Estate of Bell* was a case in which the estate apparently made the overpayments voluntarily, based on its own miscalculation of the estate taxes due, whereas in the instant case the Estate made payments in excess of what it considered to be the correct amount only because the IRS threatened to penalize it, cancel its § 6166 election, and seize its assets.

The IRS argues that this is a distinction without a difference. Whether or not the IRS is correct is not clear. Even if the taxpayer is not permitted to obtain an immediate refund when it miscalculates the amount of an installment payment or makes a *voluntary or erroneous* overpayment, it does not necessarily follow that the IRS is entitled to *force* installment payments in excess of what is actually due, thereby eviscerating the taxpayer's statutory prerogative to defer payment. Three district court decisions provide strong support for this position, which is, in effect, the voluntariness distinction advocated by the Estate.

In *Snyder v. United States*, 630 F.Supp. 182 (D.Md.1986), the taxpayer elected to defer payment under § 6166. After an audit, the IRS increased the value of certain stock and assessed a large deficiency. The taxpayer paid the deficiency immediately, but under protest, and then brought suit for a refund. Based on a favorable jury verdict as to the value of the stock, the district court determined that the taxpayer had overpaid the government, and entered a judgment for the amount of the overpayment. Rather than refunding this amount to the taxpayer, however, the IRS credited it against the unpaid installments of estate tax liability, pursuant to § 6403. The district court disallowed this. According to the court, "[s]ection 6166 creates a very valuable right for taxpayers." *Id.* at 184. And "[i]f the judgment were to be credited to the deferred tax liability, this would have the effect of nullifying the benefits of deferred payments under § 6166. It is inconceivable that Congress intended such

a result." *Id.* at 185. The court explained that it was "painfully concerned with the inherent injustice of the government's position," and refused to adopt it. *Id.*

In *Eichheim v. United States*, No. 86–M–1872, 1988 WL 123832 (D.Colo. Mar.28, 1988), the IRS wrongly terminated the taxpayer's § 6166 election and demanded payment of the full amount of the taxpayer's estate tax liability. The taxpayer borrowed the money, paid the government, and then sued for a refund. The government admitted that it had been wrong in terminating the § 6166 election and in demanding the premature payment of the outstanding installments. Nonetheless, it argued that the overpayment should be construed as a credit against the future installments under § 6403, and therefore that no reimbursement was necessary. The district court characterized this argument as "specious," and held that, "[s]ince the payment was not an overpayment willingly made at the option of the taxpayer, but, instead, was made as the result of an erroneous demand on the part of the IRS," § 6403 did not apply. *Id.* at *3.

*Gettysburg Nat'l Bank v. United States*, No. 1:CV–90–1607, 1992 WL 472022 (M.D.Pa. July 17, 1992), was another case in which the IRS wrongly terminated the taxpayer's § 6166 election. In that case, the taxpayer paid the entire amount of the estate tax, and then sued for a refund. Relying on *Eichheim*, the district court held "that Plaintiff's § 6166 election was valid, and is deserving of a refund and the opportunity to pay its tax debt in installments pursuant to that statute." *Id.* at *12.

In each of these cases, the overpayment was caused by the IRS's wrongful assessment, not by the taxpayer's erroneous valuation or calculation. The taxpayer paid the tax prematurely, but only under protest. In all three cases, the district court granted a refund, rather than a credit against future installment payments.

It should be noted, however, that two of these cases, *Snyder* and *Eichheim*, pre-date *Estate of Bell*, while the third, *Gettysburg National Bank*, neglects to mention *Estate of Bell* at all. And the Tax Court in *Estate of Bell* explicitly disagreed with *Snyder* and *Eichheim*. See *Estate of Bell*, 92 T.C. at 727 ("The Executrix cites two cases as authority for her interpretation of sections 6166 and 6403: [*Snyder* and *Eichheim* ]. With respect to both cases, however, we respectfully decline to agree with such Courts' interpretations of Congress' intent under section 6403."). Nonetheless, it does not necessarily follow that these district court cases are refuted altogether by *Estate of Bell*. To the extent that *Snyder* and *Eichheim* may suggest that §§ 6402 and 6403 have no application whatsoever to overpayments of installments made pursuant to § 6166, see *Snyder*, 630 F.Supp. at 184; *Eichheim*, 1988 WL 123832, at *3, they do not accurately state the law. But to the extent that those cases were premised on the notion that the government may not nullify a taxpayer's right to a § 6166 election by forcing the wrongful premature payment of estate taxes, they may remain unaffected by *Estate of Bell*.

These district court cases could, in fact, be reconciled with *Estate of Bell* by drawing out the distinction that may be implicit in all of these holdings: when the overpayment of a § 6166 installment is voluntarily made (*e.g.*, is the result of a mistake on the part of the taxpayer), it will be credited against outstanding installments under § 6403, but when the overpayment is both the result of erroneous or wrongful conduct on the part of the government and made under protest by the taxpayer, it will be refunded to the taxpayer in order to preserve the taxpayer's statutory right to defer payment under § 6166.[6]

---

**6.** This interpretation does not appear to be at odds with the history of § 6403. That section has its roots in *Blair v. United States ex rel. Birkenstock*, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983 (1926). In that case, the Supreme Court rejected the argument that a taxpayer who had been permitted to pay an income tax in four equal quarterly installments, each of which proved to be too high, was entitled, in receiving a refund, to have the interest on the excess of each quarterly payment run from the date that the payment was made. The Court ruled instead that the interest on the overpayment would run only from the point at which the taxpayer's total payments for the year exceeded its total liability for the year. Prior to that time, there had merely

This distinction has the advantages of 1) preserving the holdings of *Estate of Bell* and *Birkenstock* without overruling *Snyder, Eichheim*, and *Gettysburg National Bank* and hence 2) not allowing the IRS, simply by wrongly over-assessing the estate or improperly terminating a § 6166 election, to eviscerate a taxpayer's statutory prerogative to defer payment, thereby undermining Congress' intent in enacting § 6166. On the other hand, it faces a difficult textual hurdle. Section 6403 makes no mention of such a distinction, and on its face appears to apply to any overpayment of an installment due under a § 6166 deferral plan. The question is therefore this: does the word "paid," as used in § 6403, imply a degree of voluntariness or does it apply as well to any compelled transfer of moneys. *Cf. Drummond v. Maine Employment Sec. Comm.*, 157 Me. 404, 173 A.2d 353, 356 (1961) ("Where a statute providing for a refund of excessive or erroneous taxes paid is general in its terms, it applies to voluntary, as well as to involuntary or compulsory, payment, or payment under protest.") (citation and internal quotation marks omitted).

We express no views on that question, or on validity of the Estate's "voluntariness" distinction more generally, since we need not decide the issue. It is true that the Estate here paid amounts in excess of what it claimed were due only under the threat of a tax lien, and hence this case would appear to be more akin to *Eichheim* and the other district court cases than to *Estate of Bell*.[7] But regardless of whether § 6403 applies to involuntary overpayments, the Estate cannot be entitled to a refund unless there *was* an overpayment, unless, that is, the IRS violated the Estate's rights when it refused to

allow the Estate to reduce its installment payments to reflect the deductions that it was claiming under § 2053(a)(2). And on this point, we hold for the government.

## II. Section 2053(a)(2) interest deductions

Should the Estate have been permitted to recalculate its estate tax liability, and thus its periodic payments, to take into account the interest deductions provided for in § 2053(a)(2)? If the IRS was *not* required to permit the Estate to do this, then the IRS did not make any erroneous calculations, there was no premature payment, and the Estate cannot now demand the right to be reimbursed in the amount of $478,840.07 in order to pay back that sum over a six-year period. We reach precisely that conclusion.

 Pursuant to I.R.C. § 2053(a)(2), the annual interest payments owing as a result of a § 6166 election are allowed as a deduction against the decedent's federal estate tax liability. *See* Rev. Rul. 78–125, 1978–1 C.B. 292; *Estate of Bahr*, 68 T.C. at 83. However, no deduction is allowed until those interest expenses actually accrue. *See Estate of Bailly*, 81 T.C. at 252. In 1981, the IRS promulgated Revenue Procedure 81–27, 1981–2 C.B. 547, "to set forth the procedure to be followed by an estate when installment payments due under sections 6166 or 6166A of the Internal Revenue Code are recomputed because of a reduction in the estate tax caused by the payment of interest on the tax due." *Id.* at § 1. That Revenue Procedure allows an estate to file a supplemental return adjusting the estate's tax liability at the time at which it makes the payment of interest for which the deduction is claimed. *See id.* at

been "an advance payment of later instalments," and not "a tax erroneously or illegally assessed or collected." *Id.* at 353, 46 S.Ct. at 508 (internal quotation marks omitted).

It is not easy to tell from the *Birkenstock* case whether the original overpayment resulted from an error by the taxpayer or the government. The D.C. Circuit opinion in *Birkenstock* notes that the taxpayer "filed a claim with the Commissioner, alleging that the *assessment* was excessive, and claiming a refund." *Blair v. United States ex rel. Birkenstock*, 6 F.2d 679, 680 (D.C.Cir.1925) (emphasis added). This might suggest that it was the United States that originally arrived at the

excessive figure. But in any event, the Supreme Court opinion notes that the taxpayer "paid without protest" the original excessive amount. *Birkenstock*, 271 U.S. at 349, 46 S.Ct. at 507. Thus, regardless of who was responsible for the erroneous calculation, the taxpayer paid the tax voluntarily.

7. While there would doubtless be cases at the extremes that would fall squarely on one side or the other of the line, we note that the voluntariness distinction might prove difficult to administer in practice, perhaps even on facts like those here.

§ 3.[8] In this manner, the estate can take advantage of the deduction as it makes its installment payments, rather than having to wait until the end of the deferral period.

Attempting to invoke Revenue Procedure 81–27, the Estate submitted supplemental returns each time it made a § 6166 payment, and reduced the amount of its payments to reflect the interest deductions it claimed in the returns. The IRS disregarded these returns and refused to alter the amount of its assessments. The Estate claims that the IRS erred in refusing to accept these supplemental returns, and that, by disregarding its own Revenue Procedure, the IRS unjustifiably forced the Estate to pay $478,840.07 prematurely.

According to the IRS, however, "[t]here is no mandate in the Internal Revenue Code for the abatement procedures set forth in Rev. Proc. 81–27." Rather, the IRS allows some taxpayers to invoke those procedures "[p]urely as an act of administrative grace." The IRS has a practice of not affording relief under Revenue Procedure 81–27 during the pendency of any Tax Court case because of the difficulties of coordinating the activities of the IRS Service Center with the IRS District Counsel's Office. Insofar as the abatement procedures are an act of "administrative grace," the IRS claims to be free to follow this administratively convenient practice. For these reasons, the IRS contends that it was not required to allow the Estate to invoke Revenue Procedure 81–27. We hold that the IRS is correct, at least on the facts of this case.

It is well-established that, as a general rule, "the I.R.S.'s Revenue Procedures are directory not mandatory." *Estate of Jones v. Commissioner,* 795 F.2d 566, 571 (6th Cir.1986) (citing *Cleveland Trust Co. v. United States,* 421 F.2d 475 (6th Cir.1970)); *see also Dewberry v. United States,* 158 B.R. 979, 984 (Bankr.W.D.Mich.1993) (pointing out "that circuit[s] have consistently held that the [IRS's] ... Revenue Procedures are directory and not mandatory"); *Tucker v.*

*Commissioner,* 45 T.C.M. (CCH) 1347, 1349, 1983 WL 14189 (1983) (stating that "procedural rules such as those set forth in various Revenue Procedures ... are merely directory and not mandatory"). In other words, the "failure to comply with [a] Revenue [Procedure] ... is not dispositive, as IRS procedures are mere guidelines without the force of law." *Virginia Educ. Fund v. Commissioner,* 799 F.2d 903, 904 (4th Cir.1986); *see also United States v. Toyota of Visalia,* 772 F.Supp. 481, 486 (E.D.Cal.1991) (Revenue Procedures do "not have the force and effect of law and thus [are] not binding on the I.R.S."), *aff'd,* 988 F.2d 126 (9th Cir.1993); *Vosters v. United States,* No. C–88–20458–WAI, 1989 WL 90554, at *2 (N.D.Cal. June 2, 1989) ("[A]s a matter of law, the IRS's failure to follow Revenue Procedures ... does not invalidate [a] plaintiff['s] civil tax assessment."); *Capitol Fed. Sav. & Loan Ass'n & Subsidiary v. Commissioner,* 96 T.C. 204, 217, 1991 WL 16490 (1991) ("Revenue procedures generally have been held to fall into [the] class of nonbinding rules, and courts have refused to invalidate the Commissioner's determinations arising out of his failure to abide by them.").

It has been noted, however, that "these cases did not purport to announce a rule applicable to all revenue procedures," and that if a Revenue Procedure "is properly characterized as a substantive statement rather than a procedural directive," the IRS may be required to follow it in every case. *Eli Lilly & Co. v. Commissioner,* 856 F.2d 855, 865 (7th Cir.1988). But the instances in which the IRS can be bound by its own Revenue Procedures appear to be quite rare. Courts have "established a two part test for determining whether a published rule has the force and effect of law." *Ward v. Commissioner,* 784 F.2d 1424, 1430 (9th Cir.1986). The IRS will be bound by a published rule if 1) the rule "prescribes substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice, and 2) the agency promulgated

---

**8.** The IRS and the Estate dispute whether supplemental tax returns may be filed along with an estate's interest payments during the five year interest-only period, or whether instead those supplemental returns may only accompany the payment of installments of estate tax. We need not resolve that dispute here.

the rules pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress." *Id.* at 1430–31 (citations, brackets, and internal quotation marks omitted).

 A Revenue Procedure will ordinarily not be binding under this test, since it "is a procedural rule promulgated by the Commissioner of the IRS without need of approval from the Secretary of the Treasury. As such it is not considered as a rule which confers rights upon taxpayers but rather is a mere internal procedural guide and is not mandatory." *Noske v. United States,* Nos. 6–97–399, 6–87–400, 1988 WL 146612, at *1 (D.Minn. Oct.18, 1988). *Compare* 26 C.F.R. § 601.601(d)(2)(i)(*b* ) ("A 'Revenue Procedure' is a statement of *procedure* . . . .") (emphasis added), *with id.* § 601.601(d)(2)(v)(*a* ) ("[C]ommunications involving *substantive* tax law . . . are published in the form of Revenue *Rulings.*") (emphasis added). *Cf. Boulez v. Commissioner,* 810 F.2d 209, 215 (D.C.Cir. 1987) (IRS's Statement of Procedural Rules is not binding, as it concerns matters of procedure and is "[i]ssued by the Commissioner, without need for approval by the Secretary"); *Cataldo v. Commissioner,* 499 F.2d 550 (2d Cir.1974) (per curiam), *aff'g* 60 T.C. 522, 1973 WL 2646 (1973) (same).

 Revenue Procedure 81–27, by its own terms, was enacted "to set forth the *procedure* to be followed by an estate when installment payments due under sections 6166 or 6166A of the Internal Revenue Code are recomputed because of a reduction in the estate tax caused by the payment of interest on the tax due." Rev. Proc. 81–27, 1981–2 C.B. 547, at § 1 (emphasis added). It is clearly a procedural rule promulgated by the Commissioner of Internal Revenue, and does not need approval by the Secretary of the Treasury. We therefore conclude that the IRS is not required to follow Revenue Procedure 81–27.

 This does not, however, end our inquiry. Even when the IRS is not bound to follow a published procedural rule, such as a Revenue Procedure, "an abuse of discretion can occur where the Commissioner fails to observe self-imposed limits upon the exercise of his discretion, provided he has invited reliance upon such limitations." *Capitol Fed. Sav. and Loan,* 96 T.C. at 217.[9] Revenue Procedure 81–27 "set[s] forth the procedure to be followed by an estate." Rev. Proc. 81–27, 1981–2 C.B. 547, at § 1. As such, it invites taxpayers to rely on it, and implies that the IRS will permit taxpayers to do so. *See generally* Rev. Proc. 89–14, 1989–1 C.B. 814, at § 7.01(5) ("Taxpayer[s] generally may rely upon . . . revenue procedures published in the Bulletin in determining the tax treatment of their own transactions. . . .").

 Accordingly, we must review the IRS's decision not to allow the Estate to invoke Revenue Procedure 81–27 for abuse of discretion. *Cf. Capitol Fed. Sav. & Loan,* 96 T.C. at 219 ("[W]e find that the Commissioner promulgated Rev. Proc. 80–51 with the intention that taxpayers would rely upon its terms. We therefore hold that a refusal to process an application for accounting method change in accordance with the terms of Rev. Proc. 80–51 is reviewable by this Court to ascertain whether respondent has abused his discretion."); *Barnett Banks of Florida, Inc. v. Commissioner,* 106 T.C. 103, 117, 1996 WL 85847 (1996) ("We conclude that here respondent has abused her discretion in denying petitioner the use of Rev. Proc. 71–21."). To prevail, the Estate must show that, in the case before us, the IRS's refusal to accept and process the supplemental returns "was arbitrary, capricious, and without basis in fact." *Capitol Fed. Sav. & Loan,* 96 T.C. at 223.

 We find that no abuse was present here. According to both an affidavit submitted to the Tax Court and the IRS's brief on appeal, it is the practice of the IRS not to

---

9. This rule affects only pronouncements regarding the exercise of discretion where the Commissioner invites reliance or where reliance is reasonable under the circumstances. Statements concerning the exercise of discretion which are issued solely for the guidance of the Commissioner's agents and employees, and which are not intended to be relied upon by the public in conducting its affairs, have not been and continue not to be binding on the Commissioner. *Id.* at 219–20.

afford taxpayers relief under Revenue Procedure 81–27 during the pendency of a Tax Court case because of the difficulty in coordinating the activities of various branches of the IRS, and because the ultimate amount of estate tax liability inevitably remains in serious question during that pendency. This is a reasonable policy. It makes little sense to allow a taxpayer to supplement its estate tax return under an administrative abatement procedure that is not mandated by the Internal Revenue Code or the Treasury Regulations when the amount of liability is in genuine dispute.[10] In those situations, the proper amount of the interest deductions cannot be established with certainty until the resolution of the Tax Court proceeding. And it would greatly complicate matters to allow taxpayers to attempt to take those indeterminate deductions, prematurely, before the case is resolved.

Because the IRS has abided by a reasonable—albeit unpublished—policy, the Commissioner did not abuse her discretion in refusing to allow the Estate to invoke Revenue Procedure 81–27. Accordingly, the Estate had no right to recalculate its estate tax liability as it made its annual interest and installment payments to reflect its deductions for accrued interest expenses under § 2053(a)(2). The Estate was properly given those deductions after the § 2013 issue had been resolved by the Tax Court, but it was not entitled to take them at an earlier time. In other words, the Estate did not overpay its installments, and it was hence not wrongly forced to pay a portion of its estate taxes prematurely.

## CONCLUSION

We conclude that the Tax Court may have placed too much emphasis on *Estate of Bell v. Commissioner* by failing to recognize that that case may not provide the IRS with unlimited power to nullify an estate's valuable statutory right to defer tax payment pursuant to § 6166 of the Internal Revenue Code. Nonetheless, on the facts of this case, we find that the IRS was not bound to allow

the Estate to invoke Revenue Procedure 81–27, and that the IRS did not abuse its discretion in abiding by its practice of not granting abatement under that Revenue Procedure during the pendency of a Tax Court proceeding. Accordingly, we hold that the IRS did not wrongfully demand the premature payment of taxes that were not yet owing under § 6166.

The decision of the Tax Court is therefore affirmed.

---

10. There is no contention in this case that the underlying dispute over the amount of the § 2013 credit was not genuine.