*Cannon Corp. v. Comm'r of Internal Revenue*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand twenty-five.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

—————————————————————

THE CANNON CORPORATION AND SUBSIDIARIES,

>  *Petitioner-Appellant,*

> v.

COMMISSIONER OF INTERNAL REVENUE,

>  *Respondent-Appellee.*

—————————————————————

23-7693-ag

| | |
|---|---|
| FOR PETITIONER-APPELLANT: | RANDALL ANDREOZZI, Lippes Mathias LLP, Clarence, New York. |
| FOR RESPONDENT-APPELLEE: | ISAAC B. ROSENBERG (Clint A. Carpenter, *on the brief*), *for* Tax Division, United |

States Department of Justice, Washington, District of Columbia.

Appeal from a judgment of the United States Tax Court (Mark V. Holmes, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the Tax Court, entered on September 14, 2023, is **AFFIRMED**.

Petitioner-Appellant The Cannon Corporation and Subsidiaries ("Cannon") appeals from the Tax Court's decisions granting summary judgment to Respondent-Appellee the Commissioner of Internal Revenue ("Commissioner") and sustaining the Commissioner's determination that Cannon was deficient in paying its income taxes for the 2011 tax year. On appeal, Cannon argues that the Tax Court erred by (1) concluding that Cannon could not report certain tax deductions for the 2007–2010 tax years on its 2011 tax return as an accounting method change, and (2) dismissing its equitable estoppel, equitable recoupment, and duty of consistency claims. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

This is a dispute over the proper procedure by which a designer of an energy efficient building may retroactively report a Section 179D deduction on its tax return. Section 179D of the Internal Revenue Code allows a building owner to deduct "the cost of energy efficient commercial building property placed in service during the taxable year." 26 U.S.C. § 179D(a). Since tax-exempt building owners—such as federal, state, and local governments—cannot themselves claim this tax deduction, a separate provision of Section 179D allows them to transfer the deduction to the designer of the energy efficient building. Specifically, Section 179D(d)(3)(A) provides:

2

> In the case of energy efficient commercial building property installed on or in property owned by a specified tax-exempt entity, the Secretary shall promulgate regulations or guidance to allow the allocation of the deduction to the person primarily responsible for designing the property in lieu of the owner of such property. Such person shall be treated as the taxpayer for purposes of this section.

*Id.* In 2008, the Internal Revenue Service ("IRS") issued IRS Notice 2008-40, which outlined procedures by which tax-exempt building owners could "allocate the § 179D deduction to the person primarily responsible for designing the property (the designer)." IRS Notice 2008-40, § 3.01. The Notice also stated that "[t]he deduction will be allowed to the designer for the taxable year that includes the date on which the property is placed in service." *Id*.

Cannon was the designer of energy efficient buildings that were placed into service by its government clients between 2006 and 2011. Those government clients allocated to Cannon their Section 179D deductions. Cannon did not, however, report any Section 179D deductions on its original tax returns for the 2006 to 2010 tax years. In September 2010, Cannon timely filed an amended 2006 tax return to claim Section 179D deductions for buildings its government clients placed into service in 2006. The IRS allowed the claimed deductions and issued Cannon a tax refund.

According to Cannon, in January 2011, as it was preparing to file an amended 2007 tax return, the IRS published Revenue Procedure 2011-14. Revenue Procedure 2011-14 generally provided "procedures by which a taxpayer may obtain automatic consent for a change in method of accounting" as to dozens of different types of incomes and deductions. Rev. Proc. 2011-14, § 1. A taxpayer can seek the Commissioner's automatic consent for a change in accounting method, and report the Section 481(a) adjustment amount that results from the change, by filing a Form 3115, *Application for Change in Accounting Method*. *See id.* § 2.02. As relevant here,

3

Revenue Procedure 2011-14 allowed a taxpayer to request automatic consent for a "change [in] method of accounting to deduct under § 179D amounts paid or incurred for the installation of energy efficient commercial building property." *Id.* App'x § 8.04(1). The Revenue Procedure instructed that "[t]he deduction for energy efficient commercial building property *must be claimed in the taxable year in which the property is placed in service*." *Id*. (emphasis added). It then specifically discussed designers under a subsection titled "Additional filing requirement": "In the case of a publicly owned building for which a designer has been allocated a deduction under § 179D, the designer becomes the taxpayer for purposes of the deduction and must attach" certain documents. *Id.* § 8.04(4). Cannon's own accountants initially did not believe that Revenue Procedure 2011-14 applied to Cannon because they did not view the taking of a Section 179D deduction as an accounting method change. However, Cannon ultimately determined that it should report its Section 179D deductions for the 2007–2010 tax years as a change in accounting method on its 2011 tax return and corresponding Form 3115, rather than file amended tax returns for those years.

Yet in September 2012, before Cannon filed its 2011 tax return, the IRS published Revenue Procedure 2012-39, which "ma[d]e clear that designers may not use the automatic change in method of accounting provisions of Rev. Proc. 2011-14 for § 179D deductions that are allocated to them." Rev. Proc. 2012-39 § 2.11. Revenue Procedure 2012-39 explained that "[t]axpayers may not use a change in method of accounting to make a permanent change in income," and that "a designer who takes a § 179D deduction is making a permanent change in its income." *Id*. It confirmed that a designer should instead claim a Section 179D deduction for a prior tax year by "fil[ing] an amended return for the taxable year in which the property was

placed in service (if that taxable year is open)." *Id*. Revenue Procedure 2012-39 also removed the portion of Revenue Procedure 2011-14 that provided designers with instructions on the documents to attach to a Form 3115.

Nevertheless, Cannon attempted to claim approximately $3.9 million in Section 179D deductions for the 2007–2010 tax years on its 2011 tax return, and reported those deductions as a Section 481(a) adjustment on an accompanying Form 3115.[1] The Commissioner denied the 2007–2010 Section 179D deductions Cannon reported on its 2011 tax return and Form 3115, and issued Cannon a notice of deficiency for the 2011 tax year.

Cannon filed a petition in the Tax Court to challenge the deficiency. It asserted that it was entitled to take the Section 179D deductions for the 2007–2010 tax years on its 2011 tax return and accompanying Form 3115. The Tax Court disagreed, concluding that Cannon could not claim those deductions on a Form 3115 as a Section 481(a) adjustment because Cannon did not change its accounting method. It further determined that Revenue Procedure 2011-14 did not help Cannon because its plain language required that the deduction be claimed in the taxable year in which the property is placed into service. In addition, the Tax Court entered summary judgment against Cannon on its equitable estoppel, equitable recoupment, and duty of consistency claims, explaining that none of those equitable claims could prevail because the Commissioner never represented in Revenue Procedure 2011-14 or elsewhere that a designer could claim Section 179D deductions as an accounting method change. This appeal followed.

---

[1] At the same time, Cannon also filed timely amended returns for the 2008–2010 tax years to "protectively" claim its Section 179D deductions for those years. *See* Appellant's Br. at 17; App'x at 357–77. Cannon could not file a timely amended 2007 tax return, however, because the three-year statute of limitations to do so had already elapsed. *See* 26 U.S.C. § 6511(a).

**DISCUSSION**

We review a Tax Court's summary judgment rulings *de novo*. *Perkins v. Comm'r*, 970 F.3d 148, 153 (2d Cir. 2020). We similarly review the Tax Court's interpretation of statutes and regulations *de novo*. *Borenstein v. Comm'r*, 919 F.3d 746, 749 (2d Cir. 2019).

## I. Accounting Method Change

We conclude that, for substantially the same reasons as were articulated by the Tax Court, Cannon improperly reported its Section 179D deductions for the 2007–2010 tax years on its 2011 tax return and accompanying Form 3115 as a Section 481(a) adjustment because the claiming of those deductions was not a change in accounting method.

Under Section 481(a) of the Internal Revenue Code, a taxpayer may make "adjustments" to its prior tax returns when the "adjustments . . . are determined to be necessary solely by reason of [a] change [in accounting method] in order to prevent amounts from being duplicated or omitted." 26 U.S.C. § 481(a)(2). As relevant here, the Treasury Regulations define a change in accounting method to include "a change in the treatment of any material item used in [an] overall plan [of accounting for gross income]." 26 C.F.R. § 1.446-1(e)(2)(ii)(a); *accord id.* § 1.481-1(a)(1). In turn, the Treasury Regulations explain that a "material item" is "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction." *Id*. § 1.446-1(e)(2)(ii)(a). As the Tax Court observed, "an item involves timing only if its tax treatment accelerates deduction or postpones income, but not if its tax treatment permanently distorts the taxpayer's lifetime taxable income." Special App'x at 12; *see* Rev. Proc. 2011-14 § 2.01(1) ("In determining whether a taxpayer's accounting practice for an item involves timing, generally the relevant question is whether the practice permanently changes the amount of the

6

taxpayer's lifetime income."); *Knight-Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 798 (11th Cir. 1984) ("The essential characteristic of a 'material item' is that it determines the timing of income or deductions."); *id.* at 798–99 (explaining that in *Schuster's Express, Inc. v. Comm'r*, 66 T.C. 588 (1976), *aff'd*, 562 F.2d 39 (2d Cir. 1977) (per curiam), the Tax Court found that Section 481 did not apply where a "taxpayer could avoid income for all time rather than simply deferring it"). Because the designer does not own the property at issue—and consequently cannot take ordinary annual depreciation deductions on that property—a Section 179D deduction for purposes of the designer is not an acceleration of depreciation (as it would be for a building owner) but is instead a one-time allocated deduction that permanently reduces the designer's taxable income. Thus, Cannon could not report the approximately $3.9 million in Section 179D deductions for the 2007–2010 tax years as an accounting method change.

Cannon does not dispute that it cannot permanently change its lifetime income through an accounting method change. Instead, it appears to contend that the deductions do not permanently change the *combined* lifetime income of the building owner and the designer because the building owner is required to reduce its basis in the property by the amount of the Section 179D deduction it allocated. *See* IRS Notice 2008-40 § 3.07. Cannon asserts that the building owner and designer should be treated together as "a single taxpayer" because Section 179D's requirement that the designer "shall be treated as the taxpayer for purposes of this section" should be interpreted to "combin[e] the designer and the owner" and "consider[] [them] together." Appellant's Br. at 30–31. However, that interpretation is inconsistent with the plain meaning of the statute. *See Lee v. Bankers Tr. Co.*, 166 F.3d 540, 543 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review

7

must end at the statute's unambiguous terms." (internal citation omitted)); *see also Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022) ("Plain meaning draws on the specific context in which that language is used." (internal quotation marks and citations omitted)). As a matter of ordinary usage, the preposition "as" means "the same as," "like," or "in the character, role, function, capacity, condition, or sense of." Webster's Third New International Dictionary 125 (2002). The phrase "treated as" therefore contemplates an analog, not a combination—the designer must be treated *like* the building owner, but not *together* with the building owner as a single taxpayer. Accordingly, Cannon's theory that the designer and building owner should be combined for the Section 481(a) analysis finds no support in the text of Section 179D, or any other authority of which we are aware.

Cannon's argument that the Tax Court misinterpreted Revenue Procedure 2011-14 is similarly unavailing. As an initial matter, Revenue Procedures generally "are directory not mandatory." *Est. of Shapiro v. Comm'r*, 111 F.3d 1010, 1017 (2d Cir. 1997) (internal quotation marks and citation omitted). In other words, they are "mere guidelines without the force of law," *id.*, and cannot override provisions of the Internal Revenue Code, including Section 481. In any event, we agree with the Tax Court that Revenue Procedure 2011-14 also does not allow Cannon to claim and report Section 179D deductions from prior years as an accounting method change. To be sure, Revenue Procedure 2011-14 provides an "[a]dditional filing requirement" for a designer seeking to file a Form 3115. Rev. Proc. 2011-14 App'x § 8.04(4). However, that language does not, as Cannon contends, "entitle[]" it to report the deductions as an accounting method change. Appellant's Br. at 10. Rather, the additional filing requirement for designers was simply superfluous; Revenue Procedure 2011-14 does not affirmatively state

that designers can seek Section 179D deductions via Form 3115 and, as discussed above, the Internal Revenue Code would not permit this practice anyway.

Moreover, read in this way, the Revenue Procedure tracks Section 481 of the Internal Revenue Code and its implementing regulations. Section 8.04 of the Revenue Procedure's Appendix advises that the Revenue Procedure applies to a "taxpayer that wants to *change its method of accounting* to deduct under § 179D amounts paid or incurred for the installation of energy efficient commercial building property." Rev. Proc. 2011-14 App'x § 8.04(1) (emphasis added). The Revenue Procedure's definition of "change in method of accounting," *id.* § 2.01(1), is similar to that found in the Treasury Regulations: the term covers taxpayers that wish to change the "timing" of a deduction, but generally excludes those that wish to claim a deduction that "permanently changes the amount of the taxpayer's lifetime income." *Id.*

For these reasons, we conclude that Cannon cannot report its Section 179D deductions for the 2007–2010 tax years on its 2011 tax return and accompanying Form 3115 as a Section 481(a) adjustment that results from a change in accounting method.

## II.     Equitable Claims

Cannon also argues that the Tax Court erred in granting summary judgment in favor of the Commissioner on Cannon's equitable estoppel, equitable recoupment, and duty of consistency claims. We disagree.

First, Cannon's equitable estoppel claim fails because the Commissioner did not make any misrepresentations to Cannon. "We apply estoppel to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in

affirmative misconduct." *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994); *see*

*Schwebel v. Crandall*, 967 F.3d 96, 103 (2d Cir. 2020). As discussed *supra*, Cannon cannot

show that the Commissioner made a misrepresentation, let alone engaged in affirmative

misconduct, because the Commissioner never represented, in Revenue Procedure 2011-14 or

elsewhere, that Cannon was entitled or obligated to report its Section 179D deductions from

prior years as an accounting method change.

For substantially the same reason, Cannon cannot make out an equitable recoupment or

duty of consistency claim. "[A] claim of equitable recoupment will lie only where the

Government has taxed a single transaction, item, or taxable event under two inconsistent

theories." *United States v. Dalm*, 494 U.S. 596, 605 n.5 (1990); *see United States v. Forma*, 42

F.3d 759, 767 (2d Cir. 1994). Cannon argues that it was taxed on inconsistent theories because

the Commissioner directed designers in Revenue Procedure 2011-14 to report Section 179D

deductions from prior years as an accounting method change but later "changed the directive and

forbade designers . . . from claiming the deduction[s]" as an accounting method change.

Appellant's Br. at 46. Cannon similarly maintains that the Commissioner breached its duty of

consistency by subjecting Cannon to different reporting procedures.[2] Both arguments are

---

[2] At oral argument, Cannon argued that the Commissioner also violated his duty of consistency by treating Cannon differently from other similarly situated taxpayers. This argument "was not adequately raised in [Cannon's] opening brief, and, accordingly, we deem that argument waived." *O'Rourke v. United States*, 587 F.3d 537, 542 (2d Cir. 2009). Cannon's supplemental brief, in which it argues that it adequately presented the argument, does not persuade us otherwise. Although Cannon noted in its opening brief that the Commissioner "processed other designers' Forms 3115 claiming the accelerated depreciation deduction," Appellant's Br. at 3, it failed to expressly argue that as a result, the Commissioner violated his duty of consistency by treating Cannon differently from those other designers. *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)).

equally unavailing because Revenue Procedure 2011-14 does not direct designers to report Section 179D deductions from prior years as an accounting method change.

In sum, we agree with the Tax Court that none of Cannon's equitable claims can survive summary judgment.[3]

*       *       *

We have considered Cannon's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the Tax Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] To the extent Cannon also adequately raised a challenge to the Tax Court's denials of its motions to compel additional discovery, that challenge fails. We agree with the Tax Court that the materials Cannon seeks, if obtained, would not raise a dispute of material fact regarding any of Cannon's claims.